**Murl Harris, Plaintiff-Appellant, v. Nicholas Minardi, Defendant-Appellee.**

**Gen. No. 65–148.**

Second District.

August 30, 1966.

Rehearing denied September 30, 1966.

Nash, Ferolie, Gosdick and Ohlson, of Rockford, for appellant.

Maynard & Maynard, of Rockford, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

On October 8, 1963, Murl Harris, the plaintiff, was riding as a passenger in an automobile driven by one John Dallavo westerly on Simpson Road in Winnebago County. Simpson Road intersects Centerville Road and has a posted speed limit of sixty-five miles per hour. The only traffic controls at the intersection are stop signs halting Centerville Road traffic before it enters Simpson Road. At the time in question the defendant, Nicholas Minardi, drove his car northerly on Centerville Road and stopped as he approached Simpson Road. He was unable to clearly

see along Simpson Road because of standing corn. Minardi proceeded and struck the left side of the Dallavo car before it could clear the intersection. As a result of the accident Harris sustained injuries to his left arm, head and neck. Heat treatments, massages and traction were prescribed and administered to Harris and at the time of the trial he had medical expenses of $1,070.90. His doctor diagnosed the injury as a whiplash injury of the neck, some contusion of the skull and cerebral concussion. The doctor further testified that the condition was permanent.

This action was brought by Harris against Minardi, the driver of the other car, to recover for his personal injuries. At the conclusion of the trial the jury found Minardi guilty and rendered judgment for Harris in the amount of $2,250. Harris was not satisfied with the size of the award and filed this appeal, raising certain questions, some which will be commented upon. We conclude that error was committed and that the case must be reversed and remanded for a new trial. It is, therefore, necessary that we discuss certain issues which should be corrected upon retrial.

■ The plaintiff first urges that the court erred in giving the following instruction based upon section 49 of the Uniform Act Regulating Traffic on Highways (c 95½, § 146, Ill Rev Stats (1963)):

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

" 'No person shall drive any vehicle upon any public highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property; or is greater than the applicable maximum speed limit established by this section or by a regulation or ordinance made pursuant to the provisions of this Article. The fact

that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions; and speed shall be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'

"If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

This instruction was given as a result of the fact that one of the defendant's theories was that the plaintiff and his driver were engaged in a joint enterprise. There was no evidence supporting this theory and the trial judge refused to give an instruction concerning joint enterprise. The trial judge did give an instruction which informed the jury that the negligence of the plaintiff's driver could not be imputed to the plaintiff. Thereupon the foregoing instruction on speed should have been withdrawn by the defendant or refused by the trial court. The only evidence of speed in the case was on the part of the plaintiff's driver. There is no evidence that the defendant was speeding. The speeding instruction tended to contradict the instruction on imputing negligence and the jury could have easily been confused by giving the foregoing instruction. Since the only evidence of speed was on the part of the plaintiff's driver the jury could have conclud-

ed that they were to use this evidence against the plaintiff as well as his driver. Under such misapprehension, the jury could have reached a compromise verdict.

Considered in the context of other error committed in the trial it appears that the giving of the speeding instruction under these circumstances constituted reversible error.

The plaintiff contends that the trial court improperly commented upon the evidence. We do not find that the court's comments were improper.

■ The plaintiff next urges that the trial court erred in sustaining an objection involving a question directed to the defendant which asked, "You failed to yield the right-of-way, didn't you?" Thereupon the plaintiff attempted to impeach the defendant by offering into evidence an admission from the defendant's discovery deposition wherein the question, "You failed to yield the right-of-way . . . ?" was asked and the answer, "Yes, that is right" given. The defendant's answer in this instance was a legal conclusion and does not constitute an admission. The trial court was correct in sustaining the objection and in refusing the impeachment.

We now come to one of the main issues of this controversy. On July 13, 1965, pursuant to court order, the plaintiff was examined by Dr. Eugene T. Leonard on behalf of the defendant. Dr. Leonard's written report was submitted to plaintiff's counsel on July 16, 1965, and the trial commenced July 21, 1965. Dr. Leonard was permitted to testify over the plaintiff's objection that there was no evidence of injury to the plaintiff and that there was no evidence that the plaintiff had ever been injured.

Section 3 of Supreme Court Rule 17–1 (c 110, § 101.17–1(3), Ill Rev Stats 1963), provides as follows:

> "Within twenty days after the completion of the examination, and in no event later than ten days

before trial, the examining physician shall prepare duplicate originals of a written report of the examination, setting out his findings, results of all tests made, his diagnoses and conclusions, and deliver or mail an original of his report and of all corrections, supplements, or additions thereto, to the attorney for the party requesting the examination and a duplicate original thereof to the attorney for the party examined or for the party who produced the person who was examined. The court may enforce compliance with this requirement. If the report is not delivered or mailed to the attorney for the party examined, or for the party who produced the person who was examined, within the time herein specified or within any extensions or modifications thereof granted by the court, neither the physician's report nor his testimony or his findings or x-ray films or the results of any tests he has made may be received in evidence except at the instance of the party examined or who produced the person examined. Adopted Oct. 21, 1957."

█ The issue before us is whether or not the foregoing rule is mandatory or discretionary. The committee notes in connection with the Rule state in part, "the penalty for failure to comply with the requirement is that the physician may not testify at the trial . . . ," Historical and Practice Notes for chapter 110, section 101.17–1 (3), Smith-Hurd Illinois Annotated Statutes. This is not a case where the Supreme Court has left us in doubt as to the penalty for failure to comply with the Rule. The Rule itself provides, "If the report is not delivered or mailed to the attorney for the party examined . . . within the time herein specified or within any extensions or modifications thereof granted by the Court, neither the physician's report nor his testimony or his findings or x-ray films or the results of any tests he has made may be

267

received in evidence except at the instance of the party examined or who produced the person examined." The clear language of the Rule makes the furnishing of the report mandatory and provides the penalty that the doctor's testimony is not admissible unless made in compliance with the Rule.

This issue has not heretofore been directly presented to an Illinois court of review, however, Illinois courts have at times commented upon the Rule. In Muscarello v. Peterson, 24 Ill App2d 262, 164 NE2d 282 (1960), a duplicate original medical report was not furnished. The court noted that this occurred before the adoption of the Supreme Court Rule 17–1 and at page 274 stated that, "Supreme Court Rule 17–1 would today bar defendant from calling Dr. Oberhill as a witness at the trial under these circumstances." On appeal, the Supreme Court in the Muscarello case in 20 Ill2d 548 at 556, 170 NE2d 564, said, "We shall refrain from commenting at length upon this feature of the case; however, since we trust that in view of Rule 17–1 of this Court similar questions will not arise in the future."

We now hold that Supreme Court Rule 17–1 is mandatory and that a failure to comply with the Rule prohibits the use of the medical report except at the instance of the party examined or at the instance of the party who produced the person examined.

This decision is not at variance with Jackson v. Whittinghill, 39 Ill App2d 315, 188 NE2d 337 (1963). In that case the defendant received a medical examination of the plaintiff within the time prescribed by Rule 17–1. Unfortunately for the defendant his medical examination was made by a general practitioner and not by a specialist. The defendant discovered his error six days before trial and his motion for continuance was denied. The court stated at page 323, "It is obvious that the provision of Paragraph 3 (of Rule 17–1) would have been violated unless the case were removed from the trial call." The

court went on to say, at page 324, that the purpose of the Rule is not to provide an expert witness for a litigant but rather to provide for discovery. It is to be noted, however, that the Rule had already been complied with and the court was there concerned only with a second examination and not with the first examination as is true in the case before us.

■ The trial court's failure to strictly enforce the Rule was compounded by the damaging nature of Dr. Leonard's testimony. He testified that there was no injury of any kind to the plaintiff. Permitting such testimony or any medical testimony in violation of the Rule constitutes reversible error.

■■ In Kinsell v. Hawthorne, 27 Ill App2d 314, 169 NE2d 678 (1960) at page 319, the court stated:

> "It is the law in Illinois that a verdict should be set aside and a new trial granted for inadequacy of damages where it is clear that injustice has been done, or where it is obvious that a jury failed to take into consideration proper elements of damage which are clearly proven, or where it is apparent that the jury made a compromise between the guilt of the defendant and the damages sustained by a plaintiff."

In the case at bar the plaintiff had medical expenses of $1,070.90. In addition he had a loss of profits of $2,000 to $3,000. The court instructed the jury that they could consider these factors: plus past and future pain, disability and the nature and extent of the injury. It is obvious to us that the jury's verdict resulted from a compromise and from confusion.

The judgment entered herein is, therefore, reversed and remanded to the trial court with instructions to proceed with a new trial in accordance with this opinion.

Reversed and remanded with instructions.

DAVIS and ABRAHAMSON, JJ., concur.