Richard Jordan, Plaintiff-Appellee, v. Don Morrissey, Individually and as Agent of S. Rosen and S. Rosen, Defendants-Appellants.

Gen. Nos. 54,231, 54,499. (Consolidated.)

First District, Third Division.

October 15, 1970.

Medard Narko, of Chicago, for appellant.

Donald G. Zerwer, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In this personal injury action arising out of a vehicular collision in downtown Chicago, a judgment for $750 was entered in favor of the plaintiff, Richard Jordan. The defendant maintains that Jordan's testimony regarding the nature of his illness, his rebuttal testimony and his counsel's closing argument constitute reversible error.

In the late afternoon of December 13, 1963, Jordan, a taxicab driver, was driving on Madison, a westbound, one-way street. He was in the southmost lane of travel, the one immediately adjacent to the cars parked along the south curb. As he drove the cab through the intersection

of Madison and Clark Streets, he noticed to his left two cars parked behind a bread truck and several in front of it. When he was half-way past the truck, it pulled out, tore the rear quarter-panel and fender off his cab and hooked onto the cab's bumper.

Jordan was thrown forward over the steering wheel, hitting his head on the visor. He testified that following the accident he experienced sharp pains in his back and legs. He went to see a physician; x rays were taken and he received some heat treatments. Over defense counsel's objections, his attorney asked him: "What did the doctor tell you what was wrong with you or with your back as a result of the accident?" Jordan replied: "The doctor told me I had a slipped disc." He testified further that his average weekly earnings as a cabdriver were $125; that he lost three weeks of work and that shortly after his return to work his employment with the cab company was terminated because he was unable to perform his duties due to the accident.

The driver of the truck testified that he was making deliveries in the downtown area for Rosen's Bakery and had parked his panel truck along the south curb of Madison Street, approximately 25 feet west of Clark. After he reentered the truck to drive away, he looked out of his rear-view mirror and noticed cars coming in the two northernmost lanes, but none coming in the lane nearest to him. The implication of this was that Jordan was changing lanes just as the truck moved from the curb. He said that after the accident both he and Jordan, in response to a police officer's inquiry, stated that they were not hurt.

■■ Jordan offered no medical testimony other than his own. His statement that his doctor told him he had a slipped disc was incompetent hearsay evidence and the objection to it should have been sustained. Vujovich v. Chicago Transit Authority, 6 Ill App2d 115, 126 NE2d 731 (1955). The error was corrected, however, later in the trial when the court ordered the statement stricken and instructed the jury to disregard it. Under the circumstances of this case, this was sufficient to alleviate any prejudice to the defendant. Mattice v. Klawans, 228 Ill App 126 (1923).

A payroll supervisor for the taxicab company, called by the defendant as a witness, testified that the reason Jordan's employment with the company came to an end was not due to his health, but to his low bookings and revenue shortages. In rebuttal, Jordan gave the testimony the defendant claims was error. He explained that he did have a revenue shortage the day he was fired, but that it occurred because he used the cab to take his wife to the hospital to have a baby.

■ ■ The defendant terms Jordan's rebuttal testimony "patently prejudicial" and "self-serving sympathetic information." The defendant has no reason to complain; he brought this on by his own tactics. It was during cross-examination by the defendant that Jordan falsely stated that his leaving the cab company was due to ill health caused by the accident. It is apparent from the record that the defendant wished to elicit this testimony because he was prepared to impeach it. The defendant states that Jordan's rebuttal testimony was improper because the sole relevant and material issue was whether he was forced to leave his position for reasons of ill health. The defendant is correct, this was the issue, and the defendant was within proper bounds in presenting evidence that Jordan did not leave his job for health reasons; but he had no right to go beyond this and show that Jordan was discharged for dishonesty. Once this collateral issue was injected into the case, it was Jordan's privilege to meet it. His explanation, that the reason the meter indicated more revenue than he accounted for was because he used the cab to take his wife to the hospital, was far less damaging to the defendant than the defendant's accusation of dishonesty was to him.

The court overruled Jordan's objections to the defendant's testimony concerning his discharge but sustained the defendant's objection to his attempted explanation. This upset Jordan's attorney so much that it colored his final argument. So many improper remarks were made by him that a new trial must be had. For example:

> "[T]his case stinks. It stinks for a couple of reasons. It stinks because there is a dispute as to the lost

time testimony . . . most of the dispute has come because [of] in my opinion, inadmissible evidence, and certainly prejudicial evidence."

". . .

"I told you already how I feel that this shouldn't be before your eyes or ears . . . . I submit that the termination of his employment by shortages . . . has no bearing or issue in this case."

". . .

"Now, I'm going to . . . ask you for some money in this case despite the fact that it stinks . . . . I state to you under oath and as a lawyer that I don't myself receive any part of this judgment. I'm employed by . . . ."

". . .

"I suggest that this [$750.00] is a fair and reasonable element [amount] of damages that my experience and talking with others has led me to believe."

". . .

"This case took a much different turn as the trial proceeded, as I felt it would when we started this case, that it stinks. The doctor refused to come in to testify."

". . .

"Well, I'm going to tell you . . . that Mr. Morrissey [the truck driver] will not have to pay this judgment himself . . . . So there is no reason for you to be sorry for Mr. Morrissey . . . . I don't again blame this on Mr. Morrissey but other people. Now, why do we have to get into a lawsuit like this? I assume that now you know some of the true facts of the case, some of you might wonder why we get this far. Well, there are two legitimate issues

here in all fairness to Mr. Morrissey and whoever is on the other side of the case."

. . .

Jordan's Attorney: "Well, your Honor, I don't know what [defense counsel] is trying to get at as trying to say that Mr. Morrissey—if he's going to say Mr. Morrissey has to pay this judgment, I wish he'd say so then because he doesn't and he knows it."

Defense Counsel: "I object."

Jordan's Attorney: "I don't know why we have to kid ourselves."

. . .

"The fact that he terminated for reasons other than health was the only issue, and it was not brought into this case by us or myself or Mr. Jordan. It was brought in by other people. And when I take [defense counsel] out of the picture, I don't think it's too hard to see who brought it in. In fact it's not hard to see at all."

 The attorney committed error in criticizing the rulings of the court and in talking law to the jury; in stating that he would not be compensated from the damages awarded Jordan and what those damages should be based on his experience and conversations with others; in informing the jury why he had no corroborative medical testimony; in stating that Morrissey would not have to pay the judgment, and in persistently intimating the existence of insurance.

 The rule in this State is that the existence of insurance coverage is not to be presented to the jury in a personal injury case. Horst v. Morand Bros. Beverage Co., 96 Ill App2d 68, 237 NE2d 732 (1968); Fitzgerald v. Brown, 86 Ill App2d 289, 230 NE2d 80 (1967). Whether Morrissey had to pay the damages and whether the insistence of "other people" forced this lawsuit to trial were in no way relevant to the question of Morrissey's

424

liability. See Ferrer v. Vecchione, 98 Ill App2d 467, 240 NE2d 439 (1968).

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

SCHWARTZ and McNAMARA, JJ., concur.