VIRGINIA M. FUNK *et al.*, Plaintiffs-Appellees, *v.* VENTURE STORES, INC., Defendant-Appellant.

Third District    No. 80-355

Opinion filed March 20, 1981.

Duncan B. Cooper, III, and Robert E. Nessemann, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Bradley W. Swearingen, of Moehle, Reardon, Smith & Day, Ltd., of Washington, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is a negligence action arising out of injuries sustained by plaintiff Virginia Funk when she tripped over a fallen no-parking sign on the sidewalk in front of defendant Venture's store located at 901 West Lake Street in Peoria, Illinois. Mrs. Funk not only suffered a broken hip as a result of the March 27, 1975, fall, but also experienced a number of complications including pneumonia and thrombophlebitis. A four-count negligence complaint was ultimately filed by Mrs. Funk and her husband

Edwin against Venture Stores, Inc., and co-defendant Schnucks' Twenty-five, Inc. Following a jury trial in the circuit court of Peoria County, a verdict was returned in favor of the plaintiffs and against defendant Venture, damages assessed in the amount of $45,000, and a judgment entered thereon. The jury also returned a verdict in favor of Schnucks' Twenty-five and against both plaintiffs. Schnucks' Twenty-five is not a party to this appeal brought by Venture.

Only two issues are raised for our consideration by defendant Venture. First, did the trial court commit reversible error in granting plaintiffs' motion *in limine* prohibiting the defendant from impeaching plaintiffs with evidence relating to the validity of their withdrawn claim for lost wages; and second, was the defendant deprived of a fair trial by plaintiffs' counsel's allegedly inflammatory and prejudicial closing argument. Before we reach the merits of the first issue raised by defendant, it is necessary to detail the relevant facts.

The plaintiffs' original negligence complaint against Venture, filed on March 17, 1977, alleged, *inter alia*, that as a result of Mrs. Funk's fall and her subsequent injuries she was "deprived of great gains, profits, salaries and wages, which she would otherwise have acquired, earned, made or received." At the time of the accident the plaintiffs were partners in a restaurant business with Mr. and Mrs. Thomas Norwood. In addition, Mrs. Funk worked in the restaurant. The business was sold in 1976.

During discovery, the defendant propounded an interrogatory to plaintiffs in which they were to state whether they had incurred "any additional financial losses as a result of the incident complained of, other than those covered by the preceding interrogatories." The plaintiffs' answer was "loss due to forced sale of business." The defendant also deposed both plaintiffs and their accountant, Vern Lewis. In their deposition, the plaintiffs stated that they had originally intended to keep working in the restaurant business until age 65, but Mrs. Funk's debilitating injuries caused them to sell the business sooner. Vern Lewis, however, stated in his deposition that the plaintiffs and their partners had in fact put the restaurant up for sale in 1974, well before the injury to Mrs. Funk occurred.

On the first day of trial (October 29, 1970), the plaintiffs amended their complaint and deleted the claim for lost wages. Because of defense counsel's opening remarks, a mistrial was declared. The plaintiffs then made a motion *in limine* to prohibit defense counsel from making any reference to the plaintiffs' withdrawn claim for lost wages for impeachment purposes. The motion *in limine* was granted, and the defendant subsequently made an offer of proof contending that Vern Lewis' deposition would contradict the plaintiffs' claim that Mrs. Funk's injury forced the sale of the restaurant and would thereby impeach the plaintiffs.

Four witnesses testified during defendant's offer of proof: Lewis, Mrs. Norwood, and both plaintiffs. Lewis stated that because of competition the restaurant business had been losing money as far back as 1973, but he did not give any opinion as to why the business was eventually sold. Mrs. Norwood testified that the business was sold because her husband's deteriorating physical condition precluded him from devoting full time to the restaurant. The plaintiffs testified that both the poor financial condition of the business and Mr. Norwood's poor health were factors in their decision to sell, but it was Mrs. Funk's injuries suffered in the fall in front of defendant's store that finally forced them to sell the restaurant. There was no evidence presented that at the time of Mrs. Funk's accident the restaurant business was in fact for sale.

The first contention of the defendant on appeal is that the trial court should have allowed it to impeach the plaintiffs by confronting them with the fact that the restaurant business had been put up for sale in 1974, thereby refuting their claim in the answer to the interrogatory that it was Mrs. Funk's injuries that forced the sale. The defendant argues that the granting of plaintiffs' motion *in limine*, which prohibited attempts at impeachment based upon these facts, deprived it of a fair trial.

■■■ Although a witness may be impeached by virtually any evidence which contradicts him and/or adversely affects his credibility, the scope of impeachment is not without limitation. One such limitation is found in the well-settled prohibition against impeachment on a collateral matter. "A witness may not be impeached as to collateral, irrelevant, or immaterial matters." (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 371, 366 N.E.2d 327, 346; accord, *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191; E. Cleary & M. Graham, Handbook of Illinois Evidence §607.2 (3d ed. 1979): R. Hunter, Trial Handbook for Illinois Lawyers §41:2 (4th ed. 1972); McCormicks' Handbook of the Law of Evidence §47 (2d ed. 1972).) "As to whether the matter is collateral within the rule the test is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as part of his case or if it could be shown in evidence for any independent purpose. There are two classes of facts of which such evidence is admissible: (1) Facts relevant to some issue in the case under the pleadings; (2) facts admissible to discredit the witness as to interest, bias, motive, corruption, or the like. All matters not within these two classes are usually considered collateral." *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 1028, 316 N.E.2d 191, 194.

■■ Upon examination, it is readily apparent that the matter with which defendant Venture sought to impeach the plaintiffs falls within neither of the two categories listed above. Whether, and to what extent, Mrs. Funk's injuries related to the decision to sell the restaurant business is irrelevant to

the issues as framed by the pleadings on the day of trial. The only issue to which that fact may be relevant—the amount of wages or profits lost due to her injuries—no longer existed at the time the parties went to trial due to plaintiffs' decision to strike the claim for lost wages from their amended complaint. The purpose of the plaintiffs' answer in the interrogatory propounded by defendant is, therefore, of no concern. After the plaintiffs abandoned their claim for lost wages, it is irrelevant whether the plaintiffs incurred additional pecuniary loss because they were forced to sell the restaurant business as a result of Mrs. Funk's injuries. Further, the fact the plaintiffs had put their restaurant up for sale prior to Mrs. Funk's injuries is clearly not probative of any bias, hostility, self-interest or motive on the plaintiffs' part. Indeed, the defendant sought to introduce that evidence not to discredit the plaintiffs through a revelation of some partiality or improper motive, but to contradict the plaintiffs' allegation that the accident had forced the sale of the restaurant business. The irrelevancy of this evidence in light of the withdrawn lost wages and profits claim rendered it collateral, and inadmissible for purposes of impeachment.

In so finding, we necessarily reject the defendant's contention that the evidence relating to the veracity of plaintiffs' lost wages claim was not collateral, but directly probative on the issue of plaintiffs' belief in the validity of their cause of action, and therefore admissible to reveal the weakness of plaintiffs' claim. The main case relied upon by defendant in support of its contention is *LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65, wherein the court concluded that a failure to fully comply with discovery may be used against the offending party as an implied admission of the weakness of their case. *LeMaster*, however, is inapposite to the instant case and not controlling. Contrary to the defendant's assertions, there is no evidence that the plaintiffs failed to fully comply with defendant's discovery requests or that they lied when they responded in their answer to defendant's interrogatory that Mrs. Funk's injuries forced the sale of the restaurant business (compare *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460). In fact, the Funks consistently stated both in their depositions and the offer of proof that it was indeed Mrs. Funk's injuries that finally convinced them to sell the business. There is no evidence that these statements were not made in good faith. The facts of this case differ significantly from those of *LeMaster*, and do not warrant the use of the information obtained during discovery against the plaintiffs as an implied admission of the weakness of their case. In light of all of the foregoing, we affirm the trial court's decision to grant the plaintiffs' motion *in limine*.

The defendant's second issue on appeal is that certain remarks made by plaintiffs' counsel in his closing argument were so inflammatory and prejudicial to defendant that a new trial is required. The first comments

made by plaintiffs' counsel that defendant alleges deprived it of its right to a fair trial occurred early in plaintiffs' counsel's closing argument. The portions we have emphasized were emphasized in defendant's brief on appeal.

> "I have been working on this as long as the Judge told you I had at the beginning, as have the other Attorneys. We have all worked on it hard. And we feel strongly about it. So at times I may have been a little tense, maybe more serious than I meant to be. But I hope I didn't offend anyone. But I *feel strongly about this case. I know a lot about it.*"

Defense counsel objected to those statements on the grounds that in making them plaintiffs' counsel was asserting his personal belief in the plaintiffs' cause. The trial court overruled the objection, but did caution counsel to "proceed without too much personal reference."

Later in his closing argument, plaintiffs' counsel made the following statements. Again, the emphasized language was emphasized by defendant in its appellate brief:

> "You think about Virginia Funk. You know now that she has a crushed—excuse me—fractured hip. You know what her injuries were. You heard Dr. Watson talk about them. You saw the X-rays. You saw, in one X-ray, both sides of her hip. And you saw how one hip was driven up higher and fractured. You think about that injury. And you think about that happening when she fell and hit that pavement, and that hip jambed up. And you think about her laying there. It is not a pleasant thought. We don't like to think about people that are injured. But you have that duty. You have got to think about this and you've got to think about her laying there. At first there was no pain. There seldom is when you first get hit hard. It is kind of a shock. But after a while when she tried to get up, you think about that foot that was dangling. *You think* about that pain that she felt as she was lifted up and carried into the store and sat on a straight chair. *How does it feel to sit there and be nauseated, become nauseous because of your own pain.* The pain that was caused, not because you weren't careful, but because somebody kept setting up signs. *You think* about being carried out to the car, half walking. *You think* about being taken to an emergency room, where you sit, with pain, and wait.
>
>             \* \* \*
>
> Is her inability to walk or do things like she did before worth $20,000? I don't know. That is for you to decide. I don't know if that is too little or too much. *I don't know what kind of value to place on the pain she felt, to avoid that.* And she has felt it for two

years. And she still feels it. Is that worth $30,000? Is that too little? Is that too much? *What would a person pay to avoid that?*"

At this point defense counsel objected. The trial court sustained the objection as to the phraseology used by plaintiffs' counsel, who rephrased the statement in response to a request by the court.

The final statement by plaintiffs' counsel during closing argument to which the defendant directs our attention occurred when plaintiffs' counsel stated that when Mrs. Funk was being deposed she "was in a room with three lawyers, two of them high priced." This comment was withdrawn following an objection by defense counsel.

■■ As can be seen from the above, defense counsel specifically objected to only three comments by plaintiffs' attorney: His statement as to his personal feelings about the case; his "What would a person pay to avoid that" comment; and his reference to defense counsel as "high priced." All of the other comments made by plaintiffs' counsel to which defendant now objects were neither objected to at the time they were made nor asserted as error in defendant's post-trial motion. Therefore, any error which arose out of their utterance has not been preserved for appeal. (*Sommer v. City of Taylorville* (1978), 59 Ill. App. 3d 765, 375 N.E.2d 1031.) Although the comments were improper (*Brandt v. Wabash R.R. Co.* (1961), 31 Ill. App. 2d 337, 176 N.E.2d 13), any error caused as a result of these comments is not of such magnitude that a relaxation of the waiver rule is warranted. Compare *Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604.

■■ ■ With regard to the "What would a person pay to avoid that" comment, and the reference to defendant's attorneys as "high priced," timely objections were made by defense counsel. On one occasion the objection was sustained by the trial court, and on the other plaintiffs' counsel withdrew his comment. This corrective action taken by both the court and counsel for the plaintiffs in our opinion rendered harmless, in the context of the whole of the trial, any error that might have arisen as a result of these statements. (See *Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 382 N.E.2d 587.) The only statement to which an objection was made that was not sustained or otherwise cured was the plaintiffs' counsel's comment, "I feel strongly about this case. I know a lot about it." It is improper for an attorney in his closing argument to argue his personal feelings and opinions to the jury. (*Goad v. Grissom* (1944), 324 Ill. App. 123, 57 N.E.2d 514). However, as the court stated in *Mayer Paving and Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 80, 365 N.E.2d 360, 365-66, "A trial need not be free from error. Our concern is whether there was error which prejudiced the party seeking review or which unduly affected the outcome at trial." Given the fact that much of the error arising from plaintiffs' counsel's statements in closing argument

was either not considered serious enough to be called to the attention of the trial court or was cured at trial, we cannot conclude as a matter of law that this one isolated reference to counsel's personal opinion so materially prejudiced the defendant that it was denied a fair trial. See *Wolfe v. Bertrand Bowling Lanes, Inc.* (1976), 39 Ill. App. 3d 919, 351 N.E.2d 313.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

SCOTT, P. J., and STOUDER, J., concur.