BRADFORD BAUMGARTNER, Plaintiff-Appellant, v. SCOTT ZIESSOW et al., Defendants-Appellees.

First District (3rd Division) No. 86—2888

Opinion filed April 27, 1988.

Dennis E. Carlson, of Chicago, for appellant.

Torshen, Schoenfield & Spreyer, Ltd., and Garretson & Santora, both of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

After trial in the circuit court of Cook County, a jury returned a verdict for plaintiff, Bradford Baumgartner, in his negligence action against the defendants, Scott Ziessow (Ziessow) and Lisa Fosco (Fosco). After reducing plaintiff's total damages of $35,000 by the 95% of the total negligence it found attributable solely to him, the jury awarded plaintiff $1,750.

This litigation resulted from a collision in Barrington, Illinois, on June 3, 1978, between plaintiff's 50 cc. motorcycle or "minibike" driven by plaintiff and an automobile driven by Ziessow and owned by Fosco. On that date, plaintiff was riding his minibike in a westerly direction on the north shoulder of Hillside Avenue after having made a right turn from Grace Avenue. The automobile in which defendants were riding and which was travelling west on Hillside Avenue struck plaintiff from behind.

Defendant Ziessow testified as an adverse witness for plaintiff. He

testified that plaintiff continued to go straight west on the shoulder of Hillside Avenue until he turned in front of defendants' car, and that he saw plaintiff in the street and that the minibike changed direction just before the impact. Plaintiff's counsel impeached Ziessow with his deposition testimony that plaintiff had continued going straight west on the shoulder of Hillside Avenue and that he had not seen plaintiff in the street or change direction at any time. Defense counsel then established that Ziessow also testified at his deposition that plaintiff had made an abrupt or sharp left turn while still on the shoulder of the road and that the car was about 10 feet away from plaintiff when Ziessow saw him enter the roadway. On re–cross-examination, Ziessow conceded that he did not see plaintiff begin to make a left turn. Ziessow then testified that when he next saw him, plaintiff was at the right front corner of the car. Shortly before he saw plaintiff at that position and while the car was approximately six to eight feet away from plaintiff and was travelling at 10 to 15 miles per hour, Ziessow applied his brakes and turned the car to the left to avoid colliding with plaintiff. When Ziessow realized there was going to be a collision, the minibike was travelling at a speed of 5 to 10 miles per hour, had gone about a foot or two onto the road, and was at an angle of 70 degrees. The car skidded about 10 feet and came to a stop within two feet of the impact with the minibike. Ziessow further testified that he steered the car over to the left side of the westbound lane upon first seeing plaintiff in order to give him a "wide berth." The testimony of defendant Fosco largely corroborated that of defendant Ziessow.

Plaintiff testified that, at the time of the accident, he was proceeding west on the north shoulder of Hillside Avenue with the intention of crossing Hillside Avenue and proceeding to a vacant lot on the south side of the road. Plaintiff further testified that the fastest he went on the shoulder of the road was 20 miles per hour and that he had slowed to about one to two miles per hour just before stopping in order to cross Hillside Avenue. Just before the collision, plaintiff heard a car skidding on the pavement directly behind him. Plaintiff was a foot or two from the edge of the shoulder of the road and no part of the minibike was on the pavement of the road. The next thing plaintiff recalled was waking up while lying on the pavement. He did not recall the impact or anything between the time of impact and the time he found himself lying on the ground. Plaintiff testified that based on his experience with the minibike during the year and a half he owned it, he could not have made a 90- to 70-degree left turn from the gravel shoulder of the road at 5 or 10 miles per hour.

John Mack, called by plaintiff, testified under cross-examination

that he had passed plaintiff on Hillside Avenue prior to the accident and that, as he was looking at plaintiff through his rearview mirror, he saw him turn left without looking back and that immediately thereafter, he saw a car strike plaintiff. Mack also testified that the car tried to stop before striking plaintiff and that it struck plaintiff on the left side of the westbound lane of Hillside Avenue. On redirect examination, Mack testified that plaintiff's minibike had made a 90-degree turn to the left, was facing south, and had almost reached the center of the road when struck by defendants' car.

OPINION

On appeal, plaintiff first contends that the trial court erred in failing to instruct the jury that defendants had the burden of proving plaintiff's contributory negligence. Plaintiff relies on *Casey v. Baseden* (1985), 131 Ill. App. 3d 716, 475 N.E.2d 1375, *aff'd* (1986), 111 Ill. 2d 341, 490 N.E.2d 4, decided before trial in this cause commenced, which held that defendants have the burden of proving a plaintiff's contributory negligence and that an instruction to that effect is proper.

■ We find this contention meritless. Initially, we find no support in the record for the assertion that defense counsel violated Supreme Court Rule 7—106(b)(1) (107 Ill. 2d R. 7—106(b)(1)), requiring counsel to disclose adverse authority, by failing to disclose the *Casey* decision. In so arguing, plaintiff relies on defense counsel's statement in the instructions conference that the supreme court "has a couple brand new cases out" on the subject of affirmative defenses. He argues that this statement "suggests" defense counsel's awareness of *Casey*. This argument is purely conjectural and speculative. As already noted, the appellate court's decision in *Casey* was filed before the trial in this cause commenced. However, the supreme court opinion affirming *Casey* was not filed until February 21, 1986. As such, it was impossible for defense counsel to have been aware of the supreme court's affirmance of *Casey* on October 17, 1985, when the instructions conference in this cause was held.

■ Also unavailing is plaintiff's assertion that he did not tender an instruction on defendants' burden to prove contributory negligence because the trial court ruled that no such instruction was proper or necessary. According to plaintiff, the trial court believed that, since negligence on plaintiff's part would not totally bar the action, it was not an affirmative defense requiring an instruction. However, the discussion in the instructions conference regarding whether defendants had any affirmative defenses and whether plaintiff's contributory negligence was such a defense occurred after the trial court and counsel

had reviewed plaintiff's proposed instructions. And plaintiff's proposed instructions did not include one regarding any burden on defendants to prove contributory negligence. It is thus untenable for plaintiff to argue that he offered no such instruction because of an observation the trial court made only after the review of his proposed instructions.

Moreover, the record reveals that plaintiff offered no instruction on defendants' burden to prove contributory negligence because he did not believe that they had that burden. When defense counsel stated that there was a problem in Illinois with affirmative defenses, plaintiff's counsel stated, "You think contributory negligence is an affirmative defense? That's wonderful if you do."

Ultimately, we find that plaintiff's failure to tender an instruction on defendants' burden to prove contributory negligence has resulted in a waiver of the alleged error in failing to give such an instruction. 107 Ill. 2d R. 366(b)(2)(i); see also, *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817; *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 502 N.E.2d 806.

■■ Plaintiff next contends the trial court erred in rejecting a tendered instruction that he should be held to the standard of care imposed on a minor and in instructing the jury, instead, that he was held to the standard of care of an adult.

This contention is also meritless. The law is settled in Illinois that minors operating motor vehicles (*McWethy v. Lee* (1971), 1 Ill. App. 3d 80, 272 N.E.2d 663; *Dawson v. Hoffman* (1963), 43 Ill. App. 2d 17, 192 N.E.2d 695; *Betzold v. Erickson* (1962), 35 Ill. App. 2d 203, 182 N.E.2d 342) and, specifically, minibikes (*Sherrod v. Brannock* (1978), 67 Ill. App. 3d 972, 385 N.E.2d 735; *Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97; *Perricone v. DiBartolo* (1973), 14 Ill. App. 3d 514, 302 N.E.2d 637) are held to the standard of care of an adult.

Moreover, *King v. Casad* (1984), 122 Ill. App. 3d 566, 461 N.E.2d 685, expressly rejected the rationale plaintiff cites for applying a minor standard of care in this type of case, *i.e.,* that it is obvious to a defendant that he is dealing with a minor. The *King* court observed that a higher standard of care is imposed on a minor when he is engaged in an adult activity because of the more dangerous nature of that activity, not because the public is on notice of his minority. The court noted that defining the standard of care required of a person by reference to whether another person had notice of the former's conduct is illogical. *King*, 122 Ill. App. 3d at 572.

Finally, the cases plaintiff cites in support of his contention are factually distinguishable. Both *King* and *Conway v. Tamborini* (1966), 68

Ill. App. 2d 190, 215 N.E.2d 303, involved minor plaintiffs struck by motor vehicles while riding bicycles. *Mack v. Davis* (1966), 75 Ill. App. 2d 88, 221 N.E.2d 121, involved a 17-year-old plaintiff injured when he fell off a farm tractor. The *Mack* court noted the general rule that a minor engaged in the operation of a motor vehicle must be judged by the standard of care required of all other drivers. It concluded, however, that under the circumstances of the case, including that farm tractors are frequently operated by minors and that a substantial part of their operation is not on public highways nor involves any particular hazard to the public, the standard of care required of the plaintiff was that of a person of his age, experience and intelligence. *Mack*, 76 Ill. App. 2d at 96.

The accident here occurred on a public road and, unlike *Mack*, as a result of a collision with another vehicle. As such there is not the same justification as in *Mack* for excusing plaintiff from an adult standard of care. That plaintiff contended he was struck while on the shoulder of the road does not alter that conclusion. For purposes of determining the proper standard of care required of plaintiff, we believe the shoulder of the road was as much a part of the public road as the paved portion of the road on which vehicles normally travel.

■ Plaintiff next contends the trial court erred in rejecting a tendered instruction relating to the medical treatment of his injuries. That instruction read:

> "It is not a defense in mitigation of the damages claimed by the plaintiff that [his] injuries were not properly treated or that they were aggravated by medical or hospital personnel ***, and a plaintiff is entitled to recover not only for the original injury but for any aggravation of the original injury caused by later physician or hospital malpractice."

To support this instruction, plaintiff asserts that the "spectre" of improper medical treatment arose from defendants' reference to other accidents involving plaintiff and further that defense counsel emphasized that point in closing argument.

The record reveals that Dr. James Cox treated injuries plaintiff suffered to his left leg and ankle on several occasions over several months, injuries which were a result of the collision with defendants. Dr. Cox subsequently treated plaintiff for injuries to his left ankle which resulted from mishaps unrelated to the collision with defendants. The record further reveals that defense counsel did not ask Dr. Cox about his treatment of subsequent injuries suffered by plaintiff to show, either directly or indirectly, that plaintiff received improper medical treatment which may have been a proximate cause of the in-

juries he complained of at trial. Rather, he asked Dr. Cox about his subsequent treatment of plaintiff for unrelated injuries and whether plaintiff had complained on those occasions of any pain in his leg or ankle related to the injuries plaintiff suffered on June 3, 1978. Clearly, those questions related only to the permanency of plaintiff's injuries, not any alleged medical malpractice. Moreover, this is made manifest in defense counsel's closing argument. Defense counsel expressly told the jury not even to consider Dr. Cox' subsequent unrelated treatments of plaintiff and that such treatments had nothing to do with "this case at all." A review of the record thus convinces us that there was no evidence justifying the tendered instruction.

Plaintiff cites *Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768, and *Greim v. Sharpe Motor Lines* (1968), 101 Ill. App. 2d 142, 242 N.E.2d 282, as supporting the instruction at issue. In both cases, the defendants contended at trial that the plaintiff's injuries were caused by prior accidents. In both, the courts held that evidence of the prior accidents was incompetent in view of the defendants' failures to connect those accidents to the injuries allegedly caused by defendants. Defendants here neither contended at trial nor otherwise attempted in any way to show that the injuries for which plaintiff sought recovery from them were caused either by prior or subsequent accidents or medical malpractice. As such, *Marut* and *Greim* are simply inapposite and unavailing to plaintiff.

■■ ■ Plaintiff next contends the trial court erred in denying a motion *in limine* to bar the testimony of Officer Cornelius Quill of the Cook County sheriff's police department. Officer Quill investigated the collision at the scene and completed a police report of the investigation. Plaintiff further contends that having denied that motion, the trial court erred in failing to restrict the testimony to prevent admission of conclusions reached from hearsay contained in the report.

Police reports are generally inadmissible as substantive evidence. (*Hall v. Baum Corp.* (1973), 12 Ill. App. 3d 755, 760, 299 N.E.2d 156; 107 Ill. 2d R. 236(b).) However, they may be used to refresh a witness' recollection or be admitted as past recollection recorded. (*Taylor v. City of Chicago* (1983), 114 Ill. App. 3d 715, 717, 449 N.E.2d 272.) As such, we find no error in the trial court's denial of the motion *in limine*. Examination of the record persuades us, however, that the trial court should have stricken Officer Quill's testimony. See *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 1010, 295 N.E.2d 491.

Called as a defense witness, Officer Quill testified that he had no independent recollection of his investigation of the accident. When

asked whether he could look at his report made on June 3, 1978, and refresh his recollection and then testify without again looking at the report, the officer stated, "Pretty much, yes, sir." Officer Quill then testified to facts learned during his investigation of the accident. On cross-examination, however, the following colloquy occurred between plaintiff's counsel and Officer Quill:

"Q. *** Do you actually recall things *** recorded in the report or are you simply looking at the report and relying on that alone?

A. I'm referring back to the report.

Q. Only?

A. Yes, sir.

Q. And you've had this report in your hand for several days before you walked in here; is that right?

A. Yes, sir.

Q. So when counsel handed it to you and asked you to refresh your recollection, you had already done that several times and it didn't do anything for you, ***, as far as recalling the events?

A. No, sir."

On redirect examination, defense counsel attempted but failed, due to plaintiff's objections, to establish a foundation for admission of the police report as Officer Quill's past recollection recorded.

Thus, as in *Rigor*, the record reflects that the officer's testimony constituted a reading into evidence of the police report rather than reflecting his recollection as refreshed by the report. If it was not apparent to the trial court that Officer Quill was looking at and/or reading from the police report when he was answering defense counsel's questions, it should have been obvious when he admitted as much on cross-examination.

However, the error in allowing the officer's testimony to stand did not amount to reversible error. Among the facts to which the officer testified were that, at the point along Hillside Avenue at which the accident occurred, there was a solid yellow line on one side of the road and a broken yellow line on the other side which meant "pass with caution." Officer Quill further testified that there was a "Pass with Caution" sign in the area of the accident for westbound traffic. After the officer responded "Unknown" when asked the location of the sign in relation to the location of the accident, defense counsel asked him whether the police report would refresh his recollection. Plaintiff objected on the grounds that a nonexistent recollection could not be refreshed.

After establishing that Officer Quill could not recall exactly where the sign was and that the police report would refresh his recollection, the court allowed him to look at the report. Plaintiff objected on the grounds that, if the officer was going to relate the point of impact, his opinion would be based on hearsay and conclusion. The court overruled the objection and the officer testified that the "Pass with Caution" sign was "east of the location of impact." Plaintiff objected and the trial court struck the response and instructed the jury to disregard the answer because the officer did not see the impact. This was the only aspect of Officer Quill's direct testimony which could possibly be characterized as potentially prejudicial to plaintiff. However, in striking the officer's answer and instructing the jury to disregard it, the trial court adequately protected plaintiff from any prejudice. *Jordan v. Morrissey* (1970), 130 Ill. App. 2d 418, 420, 264 N.E.2d 734.

Even assuming that the trial court's action was insufficient to protect plaintiff from any prejudice, we find that no prejudice to plaintiff could have resulted from that answer. It is apparent from the record that plaintiff sought to prove at trial that defendant Ziessow had seen the pass-with-caution sign and that he therefore had not, as he contended, moved over to the left side of the westbound lane of Hillside Avenue to give plaintiff a "wide berth." As such, Officer Quill's testimony that the sign was located east of the place of impact, *i.e.*, at a point which defendants passed prior to colliding with plaintiff, supported, rather than contradicted, plaintiff's theory of the case. We also believe the trial court adequately protected plaintiff from any further prejudice by sustaining the objections he made during the remainder of Officer Quill's direct testimony.

■ Plaintiff next raises as error allegedly improper closing argument by defense counsel. He contends defense counsel accused plaintiff's counsel of attempting to change the place of impact and also sought to have the jury believe it was improper for plaintiff and his counsel to have gone to the accident scene to establish the point of impact. These arguments, plaintiff concludes, raised the "spectre" of subornation of perjury without any evidentiary basis. Plaintiff also asserts that the inference of perjury was compounded by defendants' improper impeachment of him with his deposition testimony.

Plaintiff failed to object to the closing arguments of which he now complains. As such, he has waived any error in those arguments for purposes of appeal. (*Daniels v. Standard Oil Realty Corp.* (1986), 145 Ill. App. 3d 363, 495 N.E.2d 1019.) Moreover, plaintiff's contentions are substantively meritless. In the portion of defendants' closing argument of which plaintiff first complains, defense counsel stated:

> "Surely I will agree wholeheartedly that [plaintiff] and his lawyer would have liked to have this accident happen some other way, but it didn't happen some other way. We know how it happened. He was driving down the shoulder of the road."

Thus, it is clear that defense counsel did not accuse plaintiff or his counsel of attempting to change the place where the collision occurred. Rather he was merely contrasting defendants' version as to the *manner* in which the accident occurred, *i.e.*, when plaintiff turned onto the paved portion of the road, with plaintiff's version, *i.e.*, when defendants' car drove onto the shoulder of the road.

In the portion of the closing argument of which plaintiff next complains, defense counsel stated:

> "Folks, what happened at the time of this accident? The plaintiff told us that a week or so ago he and his lawyer went out to the scene with—right around the corner, they went out there with a tape measure and they measured from the corner [of Hillside and Grave Avenues]. They measured 288 feet up the street, and they said this is where it was. *** And that 288 is 12 feet from the mouth of that driveway that he was going to. That was his route of travel. He was coming up here and he got to 288 feet and 12 feet ahead of him, right over there was a drive he was going in."

A reading of this argument in full does not support its characterization by plaintiff. It was in no manner improper. Rather, it merely restated a portion of plaintiff's testimony. As such, the cases plaintiff cites in support of his allegation of impropriety therein are inapposite and unavailing.

■ We also reject the alleged impropriety in defendants' impeachment of plaintiff with his deposition testimony. Plaintiff asserts that the inferences from his impeachment "were improperly argued as falsification of testimony." However, plaintiff has not cited where in the record such argument is found and we find nothing in defendants' closing argument to support that conclusion.

Additionally, we conclude that plaintiff's impeachment was not improper. Simply stated, plaintiff contends his impeachment was improper because he merely testified at his deposition to his opinion of the manner in which the accident occurred as formed from information conveyed to him by others.

On cross-examination, plaintiff stated he had no recollection of the minibike sliding or dropping out from under him when he was struck or of being thrown from the minibike. Defense counsel showed plaintiff a copy of his deposition testimony and asked whether it would refresh

his recollection as to the facts of the accident. Plaintiff stated it did not. Defense counsel then asked plaintiff whether he had been asked certain questions and had given certain answers at his deposition as to the manner in which the accident occurred. Plaintiff admitted he had. Plaintiff's deposition testimony reflected a positive recall of what had happened immediately after the collision with defendants' car. Plaintiff stated that his deposition answers were true when he gave them but were not true at the time of trial. On redirect examination, plaintiff stated his deposition testimony was based on what people had told him about the accident. He also stated he had assumed the manner in which the accident occurred.

We reject plaintiff's characterization of his deposition testimony as mere opinion. Plaintiff at no time phrased his deposition answers in the form of opinion, belief or impression. Nor can they reasonably be interpreted as such. Therefore, plaintiff cannot seriously contend that his impeachment with that testimony was improper. A court is not required to accept a party's characterization of prior testimony which finds no support in the record. Finally, the only case plaintiff cites in support, *Harris v. Minardi* (1966), 74 Ill. App. 2d 262, 220 N.E.2d 39, merely held that a defendant could not be impeached with deposition testimony which amounted to a conclusion of law, not an admission of fact. *Harris* in no way alters the rule that a witness may be impeached with a prior statement which is inconsistent with his in-court testimony. (*Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 408 N.E.2d 74.) Here, plaintiff's trial testimony that he did not recall what happened after the collision with defendants' vehicle was inconsistent with his deposition testimony, which reflected that he recalled what happened after the collision with particularity. Therefore, there was no error in allowing plaintiff's impeachment with his deposition testimony.

■■ Plaintiff next raises as error other portions of defense counsel's closing argument which we refer to only as necessary. A review of the record does not support plaintiff's contentions that defense counsel characterized plaintiff's damage request as "outrageous" or asserted that plaintiff's counsel's "real" opinion of plaintiff's damages differed from his request of $180,000. Plaintiff did not object to any of those closing arguments which defense counsel did make and of which he now complains except that he was "shocked" by the amount of damages plaintiff's counsel requested. As such, plaintiff has waived any error in those arguments. (*Daniels v. Standard Oil Realty Corp.* (1986), 145 Ill. App 3d 363, 495 N.E.2d 1019.) Moreover, while the comments may have been improper, any error in them was not of such

magnitude that it warrants a relaxation of the waiver rule. (*Funk v. Venture Stores, Inc.* (1981), 94 Ill. App. 3d 115, 418 N.E.2d 498.) The trial court sustained plaintiff's objection to defense counsel's statement that he was "shocked" by the damage request. Any error in that statement was thereby rendered harmless when viewed in the context of the trial as a whole. *Funk*, 94 Ill. App. 3d at 121.

■■ Plaintiff's contention that the trial court improperly limited his rebuttal argument is also meritless. In closing argument, defense counsel stated that he was shocked by plaintiff's damage request and that he thought "it would be closer to $25,000," although he thought even that amount would be unreasonable. In rebuttal, plaintiff's counsel stated, "[h]e's asking you to give my client $11,000 for the pain and suffering and disability[ ]" and "[c]ounsel suggests that it should be less than $11,000, and that ten is for pain, suffering and disability." The court sustained objections to these statements because defense counsel had not suggested any amount in his argument. Thus, it is clear plaintiff's counsel was not merely attempting to argue that $10,000 would, as a compromise figure, be shocking or unjust. Rather, he attempted to mischaracterize defense counsel's argument on damages as having stated that plaintiff was entitled to $10,000 for pain, suffering and disability. The trial court properly prohibited such argument.

■■ Plaintiff next contends that defense counsel improperly instructed the jury in the manner in which they were to deliberate. Specifically, he asserts that defense counsel told the jury that only one juror should read the court's instructions, that the jurors could not understand the court's instructions or the evidence, that the jurors could not use hindsight and that they should use their personal feelings of fairness in deciding the case. Plaintiff also asserts defense counsel improperly used the collective noun "we" while addressing the jury in an attempt to have the jury identify with defendants.

These contentions are also meritless. As with most of the errors alleged in defense counsel's closing argument, plaintiff failed to object to the arguments of which he now complains except for that relating to the jury's reading of the court's instructions. As such, plaintiff has waived any error in these arguments. (*Daniels v. Standard Oil Realty Corp.* (1986), 145 Ill. App. 3d 363, 495 N.E.2d 1019.) Moreover, any error in them was not of such magnitude that we will relax the waiver rule with respect to them. As to the latter argument, the trial court sustained plaintiff's objections and thus rendered any alleged error therein harmless, when viewed in the context of the entire trial. *Funk v. Venture Stores, Inc.* (1981), 94 Ill. App. 3d 115, 418 N.E.2d 498.

Plaintiff next contends that, for several reasons, the jury's allocation of 95% of the parties' negligence to him was against the manifest weight of the evidence and thus requires a new trial.

In passing upon plaintiff's contention, we are mindful that the apportionment of damages in our comparative negligence system of tort law is a determination peculiarly within the purview of the finder of fact. (See *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 17-18, 421 N.E.2d 886.) Moreover, a jury's apportionment of fault may not be reversed or vacated unless it is against the manifest weight of the evidence. *Junker v. Ziegler* (1986), 113 Ill. 2d 332, 339-40, 498 N.E.2d 1135.

Initially, we note that plaintiff cites several cases dealing with minor plaintiffs in support of his arguments. However, as plaintiff was properly held to an adult standard of care, those cases are unavailing to him and we need not address them.

Citing testimony by defendant Ziessow to the effect that he did not know whether plaintiff was on or off the roadway immediately before impact and that he was not looking at plaintiff when he allegedly turned left in front of defendants' car, plaintiff relies on *Voss v. Tune* (1984), 121 Ill. App. 3d 692, 460 N.E.2d 51, as supporting the grant of a new trial here. In *Voss*, after a jury verdict for the defendants, the trial court granted a new trial after finding that the evidence established "some degree of negligence" on one defendant's part. The appellate court affirmed, holding that the plaintiff was only required to show some negligence on the defendant's part and that, upon such a showing, any contributory negligence on the decedent's part could not entirely bar recovery. *Voss*, 121 Ill. App. 3d at 693-94.

*Voss* does not require reversal of the jury's allocation of fault inasmuch as the verdict here is fully in keeping with the *Voss* standards. The jury did find some negligence on defendants' part and plaintiff's contributory negligence did not operate to bar his recovery entirely. It cannot be argued from *Voss* that the jury erred in allocating 95% of the parties' negligence to plaintiff as *Voss* did not decide how much, other than "some," negligence was attributable to the defendant under the facts of that case.

Plaintiff also argues that the accumulation of errors at trial denied him a fair trial. However, having found no merit in plaintiff's allegations of individual errors, we perforce conclude that there was no prejudical accumulation of error.

Finally, plaintiff asserts that a new trial is required because the trial court erred in refusing to instruct the jury that defendants had a duty to sound a warning to plaintiff with the car horn. Plaintiff implies that the trial court should have instructed the jury in accord-

ance with section 11—1003.1 of the Illinois Vehicle Code (the Code). That section provides:

"[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person." Ill. Rev. Stat. 1977, ch. 95½, par. 11—1003.1.

Plaintiff's contention that the trial court did not give the jury a "warnings" instruction is meritless. The record clearly reveals that the trial court instructed the jury, in accordance with section 12—601(a) of the Code, that a driver of a motor vehicle is required to give an audible warning with the car horn when reasonably necessary to ensure safe operation. (Ill. Rev. Stat. 1977, ch. 95½, par. 12—601(a).) The court further instructed the jury that, if it found a violation of that statute, it could consider that fact with all other facts and circumstances in evidence in considering whether the party violating the statute had been negligent.

Moreover, we find no error in the giving of that instruction rather than an instruction predicated on section 11—1003.1 of the Code. Section 11—1003.1 is, by its plain language, inapplicable to the facts of this case. Plaintiff was properly held, in operating his minibike, to an adult standard of care. As such, that he was a minor at the time of the collision with defendants is immaterial to the defendants' duty to have exercised "proper precautions" upon observing him in the roadway. Moreover, he was obviously not a pedestrian at that time nor was there any evidence at trial that he was obviously confused, incapacitated, or intoxicated. As such, the trial court did not err in instructing the jury as it did with respect to defendants' duty to sound a warning to plaintiff.

Finally, in view of all the evidence adduced at trial, particularly that of the occurrence witnesses, we cannot say that the record supports a conclusion that the jury's allocation of fault was against the manifest weight of the evidence.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in its entirety.

Affirmed.

WHITE, P.J., and RIZZI, J., concur.