TIMOTHY KOONCE, a Minor by His Parent and Natural Guardian Carol Koonce, Plaintiff-Appellant, v. VINCENZIO PACILIO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—98—4446

Opinion filed September 7, 1999.

Nancy L. Hirsch, of Reibman, Hoffman & Baum, of Chicago, for appellant.

Howard J. Rigsby, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

The instant premises liability action was brought by Carol Koonce as parent and natural guardian of the plaintiff, Timothy Koonce, against defendants Vincenzio Pacilio and Teresa Pacilio. The jury returned a verdict in favor of the defendants, and the plaintiff appeals. On appeal the plaintiff argues that he is entitled to a new trial because

defense counsel made improper and prejudicial closing argument; because the trial court rejected a jury instruction tendered by the plaintiff regarding defendants' failure to produce evidence; and because the trial court denied plaintiff's request to question Vincenzio regarding a prior premises liability action. For the reasons discussed below, we reverse the judgment in favor of the defendants and remand for a new trial.

## BACKGROUND FACTS

At trial, the plaintiff contended that the defendants carelessly and negligently maintained their premises by permitting a clothesline to exist on the premises in a dangerous condition; by failing to warn of that condition; by failing to properly fix, repair and maintain the clothesline; by permitting minors to play in the area of the clothesline; and by failing to properly supervise minors in the area of the clothesline. The plaintiff contended that he was injured when the clothesline snapped and a wire, allegedly connected to the clothesline by Vincenzio, punctured his left eye causing permanent loss of vision in that eye.

The evidence at trial relevant to the issues raised in the instant appeal showed that Timothy was injured on April 10, 1992, while playing with Nello Pacilio, the defendants' son, in the backyard of the defendants' home. At that time, Timothy and Nello were 10 and 9 years old, respectively.

Nello testified as an adverse witness and stated that he and Timothy were hanging or pulling on a clothesline in the backyard, that the clothesline snapped and that Timothy's eye began to bleed. (The clothesline ran from the back porch/deck attached to the defendants' home to the defendants' unattached garage.) Nello denied seeing any wire hit Timothy in the eye. He stated there were no rocks on the ground and that they were not playing with pencils or anything sharp at the time of Timothy's injury.

Timothy testified that he and Nello were shaking and hanging on the clothesline and that the clothesline snapped and hit his left eye. He stated he looked down to see what hit him and saw a wire that had been connected to and wrapped around the clothesline. He did not see any other sharp object in the area.

Carol Koonce, Timothy's mother, testified that she received a telephone call at her place of employment on April 10, 1992, advising her that Timothy had been injured. She went to the Pacilio home and spoke to Teresa. Teresa took her to the backyard and told her, " '[t]he rope, it broke and hit Timmy's eye, cut Timmy's eye.' " Carol also was told that Vincenzio had taken Timothy to the hospital. Carol further

testified that Teresa told her that the rope had broken before Timothy was injured and that, " 'My husband put the rope together with a piece of wire.' "

Teresa Pacilio[1] testified as an adverse witness and stated that the clothesline in the backyard consisted of a cotton rope. She stated that she and her husband put up the clothesline when they moved into the house and that they brought the clothesline with them from their previous house. She testified that they moved into the house involved in the instant lawsuit in 1990. Teresa admitted that in her interrogatories she stated that they moved into that house in 1988 and that the clothesline was purchased from a local hardware store in April 1992. Teresa stated that she had put laundry on the clothesline the day before Timothy was injured and that it was "tight." She stated that the clothesline was low enough for her to reach. She was 5 feet tall and, at the time of the incident, Timothy and Nello came up to her biceps. According to Teresa the clothesline was approximately 10 feet long. Teresa testified that when Timothy was injured, the clothesline broke into two five-foot-long pieces. She did not view the broken clothesline until after Timothy's mother arrived. Teresa stated that the clothesline remained in its broken condition for approximately one week after the incident at which time she tied the two broken ends together. She further stated that the clothesline remained in that condition until it was taken down when a new garage was built in 1995. Teresa stated there was grass, not stones or twigs, underneath the clothesline. She also stated that after the incident a "wire piece where [the clothesline] was cut" was on the grass underneath but upon further questioning stated that she did not remember that a piece of wire was connected to the rope. She also testified that a man came to take pictures a week after the incident and that she showed him a wire. She stated that the man took a picture of the wire. She also stated that she and Vincenzio did not have the clothesline at the time of trial.

Vincenzio Pacilio testified through an interpreter as an adverse witness. He stated that he bought the clothesline and put it up with his wife five years before the incident. He could not remember whether it was plastic. He testified that he did not remember stating in interrogatories he completed before trial that the clothesline was plastic or that he put it up by himself shortly before the incident. He testified

---

[1]Teresa Pacilio, who was born in Italy, received seven years of education there before coming to the United States. She received six months of schooling after arriving in the United States. Although an interpreter was available, Teresa chose to testify without the use of an interpreter. Vincenzio, who also came to the United States from Italy, chose to testify through an interpreter.

that he was sleeping at the time Timothy was injured and that he did not know that Timothy was at his house playing with Nello. He stated that he did not know whether Nello had invited Timothy over to their house; he did not remember if his wife allowed Timothy to stay at their house; he did not remember whether Timothy was a guest at their house at the time he was injured; he did not remember whether he saw the clothesline after the incident; he did not remember if the clothesline was reattached after the incident; he did not remember if the clothesline was repaired or replaced after the incident; and he did not remember what happened to the clothesline. He stated that there were no rocks or twigs in the area where the clothesline was located.

Doctor Michael Shapiro, an ophthalmologist with a specialty in retina treatment, testified by way of evidence deposition. He stated that he had treated Timothy at the University of Illinois Hospital. Timothy's mother brought him to the University of Illinois Hospital from Loretto Hospital on the night of the incident. Doctor Shapiro stated that, in rendering treatment to Timothy, he relied on the emergency room reports prepared at Loretto Hospital and at the University of Illinois Hospital which stated that Timothy had been hit in the left eye by a wire. He stated that a progress note prepared by another doctor at the hospital showed that Timothy had a small laceration in the upper left eyelid and an extensive laceration to the left cornea (which he defined as the front cover of the eye) and the left uvea (which he defined as the middle layer of the eye). He stated that the uvea, which carries nourishment to different layers of the eye, had moved out of the eye through the laceration. He stated that the laceration was fairly straight, cutting across near the middle of the cornea. Doctor Shapiro opined, based upon a reasonable degree of medical and surgical certainty, that the conditions existing in Timothy's left eye were consistent with Timothy's eye being struck by a piece of wire. He further opined that the absence of any foreign body in Timothy's eye subsequent to the occurrence was irrelevant to the possibility of contact by a piece of wire to Timothy's eye. On cross-examination, Shapiro testified that the puncture wound to the eye could have been caused by a needle, a sharp poker, and, possibly, a pencil. He also stated that when an eye is struck by wire, there can be metal fibers in the eye or indications of rust. He did not review any records that would indicate the presence of metal fibers or rust in Timothy's eye.

At the conclusion of the trial, during closing argument, defense counsel made the following excerpted remarks:

"The rope was disposed of shortly after the accident because they didn't know they were going to be sued. Ladies and gentlemen, there's a lot of tension involved in the trial. Both the Koonces and Pacilios have an awful lot at stake here. ***

***

Because it is—sometimes things happen that are not natural. Sometimes we might laugh at something that you'll never laugh at any place else. It's kind of like a church or a temple. The rabbi or the priest can make a little joke and it's not even funny but everybody laughs.

There's been some times during this trial where that has happened. To the extent that maybe I was responsible for it, sorry. It's a serious situation here. As I said, it's [sic] a lot at stake. Regardless of how this happened and who you feel is at fault, this boy has lost sight in one eye and that's serious. If the Pacilios lose in this case, everything they've gotten is threatened because of a possible verdict. So it is a serious situation; and despite anything I may have done during the course of trial, it is serious."

Plaintiff's counsel objected to these remarks. The trial court responded, "With the evidence shown, the jury will be instructed at the conclusion." Defense counsel then proceeded, stating the following:

"I hope that you take it seriously, too.

As I've said, there are two things here that are going here [sic]. There is a tragedy certainly and a potential one to the Pacilios depending on how this case goes."

Plaintiff's counsel objected to this commentary but the trial court ordered argument to proceed. Thereafter, defense counsel discussed the fact that Vincenzio was a baker and Teresa a housekeeper at a local motel and characterized them as hard-working and honest people who tried to make a good life in the United States for themselves and their family. Plaintiff's counsel objected again to these remarks but the objection was overruled.

After deliberation, the jury returned a verdict in favor of the defendants.

## ANALYSIS

### I. Improper Comments

On appeal, the plaintiff first contends he is entitled to a new trial because defense counsel's closing argument was improper and highly prejudicial in that it falsely suggested to the jury that the defendants had no insurance and would bear the burden of any judgment entered against them. The plaintiff also contends that defense counsel improperly attested to the defendants' honesty and character and improperly requested the jurors to place themselves in the defendants' circumstances. We agree.

■◣ "It is well settled that it is improper to inform the jury, either directly or indirectly, that the defendant is, or is not, insured against

liability on a judgment that might be entered against him in a negligence action." *Lenz v. Julian*, 276 Ill. App. 3d 66, 75, 657 N.E.2d 712, 719 (1995); accord *Neyzelman v. Treitman*, 273 Ill. App. 3d 511, 652 N.E.2d 1300 (1995). Likewise, a defendant cannot suggest to the jury that a defendant will be personally responsible for satisfaction of the judgment entered when in fact the defendant has insurance or will be indemnified. *Lenz*, 276 Ill. App. 3d 66, 657 N.E.2d 712 (indemnity); *Rush v. Hamdy*, 255 Ill. App. 3d 352, 627 N.E.2d 1119 (1993) (insurance). Evidence of insurance or lack of it is irrelevant to the issue of negligence, yet may influence a jury in determining in which party's favor to render a verdict and in determining the size of the verdict. *Rush*, 255 Ill. App. 3d at 361-62, 627 N.E.2d at 1125 (when only compensatory damages are recoverable, the financial condition of the parties is irrelevant and appeals to the sympathy of the jury to favor those least able to bear the loss); see *Imparato v. Rooney*, 95 Ill. App. 3d 11, 15, 419 N.E.2d 620, 623 (1981).

The mere mention of insurance or lack thereof does not automatically require reversal and remand for a new trial. "To warrant reversal, however, the language utilized in a reference to defendant's financial condition must be reasonably understood to refer to the financial status of one of the parties and must result in prejudice to the complaining party." *Lenz*, 276 Ill. App. 3d at 75, 657 N.E.2d at 719; accord *Neyzelman*, 273 Ill. App. 3d 511, 652 N.E.2d 1300. If undue emphasis is placed on the irrelevant evidence, or if the jury's verdict is affected by it, then reversal is warranted. *Rush*, 255 Ill. App. 3d at 362, 627 N.E.2d at 1125.

■ In the instant case, the clear import of defense counsel's comments during closing argument was that the Pacilios had no insurance and would be personally responsible for satisfaction of any judgment entered against them. Counsel stated that "everything they've [the Pacilios] gotten is threatened because of a possible verdict" and that there could be a potential "tragedy *** to the Pacilios depending on how this case goes." The implication of lack of insurance was even more egregious because it was false. See *Lenz*, 276 Ill. App. 3d at 75, 657 N.E.2d at 719; *Rush*, 255 Ill. App. 3d at 361-62, 627 N.E.2d at 1125. Counsel's intent to appeal to the passions of the jury is further evidenced by his lengthy discussion of the Pacilios' modest standard of living, their respective occupations as baker and housekeeper, and their desire to make a better life for themselves and their family in the United States.

■ ●3 We also find that defense counsel's closing remarks improperly attested to the honesty and character of the defendants and inaccurately summarized the evidence presented at trial. While counsel is

entitled to vigorously argue his client's case and draw reasonable inferences from the evidence, counsel may not misrepresent evidence, argue facts not in evidence, or create evidence. *E.g., Lecroy v. Miller*, 272 Ill. App. 3d 925, 651 N.E.2d 617 (1995); *Taluzek v. Illinois Central Gulf R.R. Co.*, 255 Ill. App. 3d 72, 626 N.E.2d 1367 (1993). Counsel may not express his own personal belief on issues or vouch for the credibility of witnesses. *Lagoni v. Holiday Inn Midway*, 262 Ill. App. 3d 1020, 635 N.E.2d 622 (1994); *Kerns v. Lenox Machine Co.*, 74 Ill. App. 3d 194, 392 N.E.2d 688 (1979). Here the record shows that counsel gave his personal opinion that he "believe[d] [the Pacilios] are basically honest people" and that he "believe[d] the Pacilios are not responsible for this accident." These comments were improper because they reflected what counsel believed instead of what the evidence showed. Similarly, although not objected to, counsel's initial statement that "[t]he rope was disposed of shortly after the accident because they didn't know they were going to be sued" is not supported by the evidence. There was no testimony by the Pacilios or by any other witness to support that statement.

■ Finally, we agree that defense counsel improperly suggested to the jurors that they place themselves in defendants' circumstances. In an apparent response to plaintiff's assertion in closing argument that the clothesline was a dangerous instrumentality, defense counsel told the jurors that if they believed that:

"then I suggest we all go home and throw out our knives and forks. You should be careful because if you throw them out and a 10 year old comes by and picks one of those knives or forks up and does something with it, you could find yourself on trial yourselves someday."

Plaintiff objected to this statement and the objection was sustained.

Generally, it is error for counsel to ask a jury to put itself in the position of a plaintiff or a defendant. *E.g., Drews v. Gobel Freight Lines, Inc.*, 197 Ill. App. 3d 1049, 1061, 557 N.E.2d 303, 310 (1990), *aff'd*, 144 Ill. 2d 84, 578 N.E.2d 970 (1991); *Chakos v. Illinois State Toll Highway Authority*, 169 Ill. App. 3d 1018, 1029, 524 N.E.2d 615, 623 (1988); *Copeland v. Johnson*, 63 Ill. App. 2d 361, 367, 211 N.E.2d 387, 390 (1965). In the instant case, although the defendant presented a scenario to the jury that differed from the facts in this case, the thrust of that hypothetical was nevertheless to ask the jurors to put themselves in the defendants' place, strongly suggesting that they, too, could be on trial some day for injuries to children playing on their premises with dangerous objects not intended for that use. This commentary also reinforced defense counsel's attempt to portray the defendants as faultless, uninsured homeowners.

■ ■ Cumulatively, the improprieties discussed above, require the grant of a new trial. The standard for ordering a new trial when improper closing argument occurs is whether the argument was prejudicial and whether, when viewed in its entirety, the plaintiff's trial was unfair. *E.g.*, *Tierney v. Community Memorial General Hospital*, 268 Ill. App. 3d 1050, 1061, 645 N.E.2d 284, 292 (1994). An appellate court will not reverse a jury verdict unless the argument unduly affected the outcome of the trial. *Stennis v. Rekkas*, 233 Ill. App. 3d 813, 829-30, 599 N.E.2d 1059, 1070 (1992). The defendants contend that the plaintiff was not prejudiced by any improper argument by their counsel. In support, the defendants contend that the plaintiff presented insufficient evidence that the defendants negligently repaired the clothesline with a sharp piece of wire. The defendants state that the only evidence in that regard came from the hearsay testimony of plaintiff's mother and from inconclusive testimony by Doctor Shapiro that the injury to plaintiff's eye was compatible with the plaintiff's eye being struck by a wire. Defendants argue that Shapiro's testimony was weak given his cross-examination statements that plaintiff's injury could have been caused by a pen, a sharp poker or a pencil and his statement that there was an absence of rust or metal fibers in plaintiff's eye. The defendants further argue that the evidence supported their affirmative defense that the plaintiff's eye injury was solely caused by the plaintiff or by the plaintiff and Nello, a nonparty.

Initially we note that while defendants contend that the evidence was insufficient, they made no effort to ask for a directed verdict before the jury retired nor do they claim in their appeal that the evidence would have been insufficient to support a verdict in favor of the plaintiff had one been rendered. Instead, they contend on appeal that the evidence with respect to the repair of the clothesline with wire was so tenuous in its support of the plaintiff's case and so strong in its support of their case that it rendered harmless any improper comments by defense counsel. We disagree. In point of fact, the plaintiff presented substantial evidence to establish the repair of the clothesline with wire. The minor plaintiff testified that, immediately after being hit in the eye, he looked down and saw a wire connected to and wrapped around the clothesline. Plaintiff's mother testified that Teresa told her that her husband had fixed the clothesline by putting the rope together with a piece of wire. The defendants did not object at trial nor do they contend now that the testimony of plaintiff's mother was inadmissible hearsay.[2] They nevertheless contend that, although admissible, that evidence, by virtue of being hearsay, was of low-grade

---

[2]If such an objection had been made, it would have been properly denied

quality and not credible. We disagree. In addition to the fact that the unobjected-to hearsay evidence was otherwise competent (see *People v. Robinson*, 197 Ill. App. 3d 1012, 1016, 557 N.E.2d 267, 269 (1990), quoting *People v. Akis*, 63 Ill. 2d 296, 299, 347 N.E.2d 733, 735 (1976) ("if hearsay evidence is admitted without objection, it must be given its 'natural probative effect' [citations]")), in this case, the out-of-court statement by Teresa was an admission of a party against her interest and, for that reason, had an enhanced quality of credibility. See *Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 297 Ill. App. 3d 304, 311, 696 N.E.2d 761, 766 (1998) (in suggesting that admission against interest is especially trustworthy, court stated that since "school could conceivably incur liability for the teacher's misconduct, the allegation [by principal that teacher had engaged in serious misconduct] may have seemed *** to be an especially trustworthy admission against interest"). Moreover, Teresa never rebutted or contradicted Carol's testimony regarding the statement attributed to Teresa. In fact, Teresa testified that a "wire piece" was on the grass underneath the clothesline, although she then claimed a lack of memory as to whether a piece of wire was connected to the rope.

The testimony of Doctor Shapiro, plaintiff's treating physician, also was consistent with plaintiff's contention that his eye had been cut by wire. Although Shapiro also stated that another sharp object could have caused Timothy's injury, there was no evidence of any such sharp object on the premises in the vicinity where the plaintiff was injured. To the contrary, Nello testified that he and Timothy were not playing with any sharp objects at the time Timothy was injured, and Timothy and the defendants testified that there were no sharp objects such as rocks or twigs in the area of the broken clothesline.

Finally, we note that the defendants did not challenge the testimony regarding the prior repair of the clothesline or the presence of wire during closing argument. In fact, defense counsel assumed the existence of wire, arguing, instead, that the defendants could not reasonably foresee the possibility that Timothy and Nello would be hanging on the clothesline. Thus, to the extent the establishment of defendants' negligence would depend upon the presence of wire in the repair of the clothesline, the evidence favoring the defendants was not by any means substantial enough to overcome the effect of counsel's improper comments to the jury.

■ We also reject defendants' contention that the evidence

---

as to Teresa, a codefendant, because her statement was an admission of a party and was therefore admissible as to her. See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.1 (7th ed. 1999).

conclusively established that their actions were not the proximate cause of Timothy's injuries and that either Timothy's negligence was the sole proximate cause of his injury or that Timothy and Nello, a nonparty, were the proximate cause of Timothy's injury. First, we note that the defendants have waived this argument by failing to support it with citation to authority. See 155 Ill. 2d R. 341(e)(7); *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 634 N.E.2d 476 (1994). Even if we were to reach this contention, we would reject it on its merits. The jury was required to view Timothy's negligence in terms of the rebuttable presumption that children between the ages of 7 and 14 are not capable of contributory negligence. See, *e.g.*, *Savage v. Martin*, 256 Ill. App. 3d 272, 628 N.E.2d 606 (1993). It does not appear from the record that the jury was presented with any evidence to rebut this presumption.

Moreover, even if the jury had concluded that Timothy was negligent, the evidence did not conclusively establish that Timothy's negligence was the sole proximate cause of his injury. See *Savage*, 256 Ill. App. 3d at 281, 628 N.E.2d at 613 (in order to absolve defendant of liability, trier of fact must determine that child failed to exercise ordinary care and that child's negligence was sole proximate cause of injury). There was evidence from which the jury could conclude that Timothy's injury had more than one proximate cause and that another cause of his injury was the defendants' creation of a dangerous condition on their premises. See *Unger v. Eichleay Corp.*, 244 Ill. App. 3d 445, 451-52, 614 N.E.2d 1241, 1246 (1993) (there can be more than one proximate cause of an injury; where there is more than one proximate cause of injury, tortfeasor cannot avoid responsibility merely because another person is guilty of negligence contributing to same injury and even though injury would not have occurred but for negligence of the other person); *Long v. Friesland*, 178 Ill. App. 3d 42, 55, 532 N.E.2d 914, 922 (1988); *Carlton v. Verplaetse*, 120 Ill. App. 3d 795, 799, 458 N.E.2d 584, 587 (1983). The causal connection to the defendants' negligent acts would not have been broken by the acts of Timothy or Nello if the jury were to conclude that Timothy's or Nello's acts were foreseeable. See *Long*, 178 Ill. App. 3d at 55, 532 N.E.2d at 922 (test for determining whether concurrent negligent acts constitute concurrent proximate cause is whether the first wrongdoer might have reasonably anticipated or foreseen intervening cause as a natural and probable result of the first wrongdoer's negligence); *Roeseke v. Pryor*, 152 Ill. App. 3d 771, 779, 504 N.E.2d 927, 931 (1987) (subsequent act of third party does not break causal connection between defendant's negligence and plaintiff's injury where the subsequent act was probable and foreseeable).

Since the evidence at trial on these issues did not overwhelmingly favor the defendants, we cannot say that the jury's determination of the ultimate issue of liability was unaffected by defense counsel's improper remarks. It is highly probable that in making its determination of defendants' liability the jury considered a wholly irrelevant factor—the defendants' financial ability to pay the judgment. Counsel's improper argument vouching for the Pacilios' honesty, improper summarization of the evidence, and asking the jurors to put themselves in the defendants' place also may have served to influence the outcome of the trial. Thus, reversible error occurred, and the case must be remanded for a new trial.

## II. Denial of Jury Instruction

■ Since the remaining issues will arise on remand, we address them as well. Plaintiff's second contention of error relates to the court's refusal of plaintiff's tender of a jury instruction. That instruction, IPI Civil 3d No. 5.01 (Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1995) (hereinafter IPI Civil 3d)), informs the jury that it may infer from the failure of a party to produce evidence within the party's control that the evidence was adverse to the party. The instruction states that the inference can only be made if the following four conditions are met: (1) the evidence was under the control of the party and could have been produced by the exercise of reasonable diligence; (2) the evidence was not equally available to an adverse party; (3) a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him; and (4) no reasonable excuse for the failure has been shown. IPI Civil 3d No. 5.01.

Before giving IPI Civil 3d No. 5.01, the trial court must first determine whether, in all likelihood under the facts and circumstances of the case, the party would have produced the evidence unless it was unfavorable. *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1029, 659 N.E.2d 979, 983 (1995). The instruction is not warranted if the evidence which has not been produced is merely cumulative of facts already established. *Jenkins v. Dominick's Finer Foods, Inc.*, 288 Ill. App. 3d 827, 831, 681 N.E.2d 129, 132 (1997); *Tuttle v. Fruehauf Division of Fruehauf Corp.*, 122 Ill. App. 3d 835, 843, 462 N.E.2d 645, 652 (1984). As with all jury instructions, the decision whether to give IPI Civil 3d No. 5.01 is within the sound discretion of the trial court, and that decision will not be reversed absent a clear abuse of discretion. *E.g., Simmons v. University of Chicago Hospitals & Clinics*, 162 Ill. 2d 1, 7, 642 N.E.2d 107, 110 (1994); *Roeske*, 152 Ill. App. 3d at 780-81, 504 N.E.2d at 933.

■ In the instant case, the trial court refused the tender of IPI Civil 3d No. 5.01 without indicating its reason. While we normally are hesitant to find an abuse of discretion, in this case we must nevertheless conclude that the able trial judge exceeded the bounds of his discretion in refusing to give IPI Civil 3d No. 5.01. The evidence at trial showed that the clothesline was under the exclusive control of the defendants and was not available to the plaintiff. Moreover, it is reasonable to presume that a reasonably prudent person would have offered the clothesline at trial if he believed the clothesline would have disproved plaintiff's theory that the clothesline had been repaired with wire. Finally, defendants cannot contend that the missing clothesline was merely cumulative evidence of that which was already presented at trial. As previously noted, defendants have urged in this appeal that the evidence favoring the plaintiff as to the use of the wire to repair the clothesline was tenuous. While for the reasons previously discussed we disagree with that assertion, there is no question that the production of the clothesline would have gone a considerable distance toward eliminating any remaining doubts or questions concerning the condition of the rope and the mode and manner in which it was repaired.

The defendants argue, however, that they had a reasonable excuse for not producing the clothesline in that they did not keep it because it was "a simple piece of broken rope" and because they were unaware that they were going to be sued by the plaintiff. This argument belies the evidence at trial. Teresa testified that a week after the incident a man came to take pictures of the clothesline. That occurrence alone would suggest that the clothesline was of importance. Teresa also testified that the clothesline remained attached to the premises, after being retied, until a new garage was built in 1995. The plaintiff's complaint was filed on April 4, 1994, several months before 1995, and that complaint alleged that the clothesline was the instrumentality that caused the plaintiff's eye injury. Clearly, the taking of pictures of the clothesline and the filing of the complaint naming the clothesline as the instrumentality that injured the plaintiff would have in all likelihood caused the defendants, as reasonably prudent persons, notwithstanding their attempt to portray themselves as unskilled laborers, to have exercised diligence in saving the clothesline and in presenting it as evidence if it negated their liability to the plaintiff.[3] The foundation for IPI Civil 3d No. 5.01 was established, and the trial court erred in refusing its tender.

---

[3]As will be discussed below, the defendants' attempt to portray themselves as being oblivious to the significance of the rope would have been further chal-

## III. Prior Action Against the Defendants

As his final argument on appeal, the plaintiff argues that the trial court erred in prohibiting plaintiff from questioning Vincenzio about the fact that he had been a defendant in a prior premises liability action. The plaintiff contends that this evidence was relevant to establish the foundation for the tendering of IPI Civil 3d No. 5.01 in that it would show that the defendants understood the legal process and the importance of preserving evidence.

Generally, each party is entitled to present evidence that is relevant to its theory of the case. However, where the probative value of the evidence is outweighed by its prejudicial effect, the trial court may properly deny its introduction. *E.g., Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill. App. 3d 627, 636, 672 N.E.2d 1271, 1278 (1996); *Mack v. First Security Bank*, 158 Ill. App. 3d 497, 504, 511 N.E.2d 714, 719 (1987); see generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1 (7th ed. 1999). The introduction of evidence is within the sound discretion of the trial court, and the reviewing court will not disturb the trial court's ruling unless there has been an abuse of discretion. *E.g., Tellone v. North Shore Dodge, Inc.*, 271 Ill. App. 3d 885, 888, 649 N.E.2d 625, 628 (1995); *Templeton v. Chicago & North Western Transportation Co.*, 257 Ill. App. 3d 42, 47, 628 N.E.2d 442, 446 (1993); *Hengels v. Gilski*, 127 Ill. App. 3d 894, 914, 469 N.E.2d 708, 723 (1984).

Here, evidence of the prior premises liability action against the defendants would have been relevant to show that the defendants were not totally naive and unsophisticated about premises liability actions and would have had some bearing on whether the defendants would have known of the need to safeguard and present exonerating evidence. See *Templeton*, 257 Ill. App. 3d at 48, 628 N.E.2d at 446 (evidence of prior occurrences relevant to show knowledge and notice of dangerous condition). Thus, as alluded to earlier,[4] the evidence would have provided an enhanced basis for the giving of IPI Civil 3d No. 5.01. However, the relevant import of that evidence, which is at best indirect and inferential, was outweighed by its prejudicial impact, in that it would have led the jury to conclude that the defendants were

---

lenged had the court permitted plaintiff to introduce evidence that Vincenzio was previously sued in another premises liability action. However, as stated below, we need not rely upon that evidence in reaching our determination here since there is sufficient evidence from which to clearly infer defendants' awareness of the significance of the discarded evidence without considering the prior lawsuit filed against Vincenzio.

[4]See *supra* note 3.

keepers of unsafe premises. Moreover, as is clear from our discussion in section II of this opinion, the foundation for that instruction was established without the need to introduce this evidence. Thus, we do not believe that the trial court abused its discretion in prohibiting the plaintiff from introducing evidence of the prior action.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

RAKOWSKI and McNULTY, JJ., concur.