NOTICE

Decision filed 06/14/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170152

NO. 5-17-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JAMES LAKIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-L-655 |
| | ) | |
| CASEY'S RETAIL COMPANY, d/b/a | ) | |
| Casey's General Store, Inc. #1972, | ) | |
| a/k/a Casey's General Stores, Inc., | ) | |
| an Iowa Corporation, | ) | Honorable |
| | ) | William A. Mudge, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Barberis and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, James Lakin, filed a personal injury action in the circuit court of Madison County after he slipped and fell at a store owned by defendant, Casey's Retail Company doing business as Casey's General Store, Inc. #1972, also known as Casey's General Stores, Inc. (Casey's). After a jury trial, plaintiff was awarded $550,000. The two issues raised by Casey's on appeal are (1) whether the trial court erred in instructing the jury and (2) whether the trial court erred in refusing to allow defendant to cross-examine plaintiff about statements he made before trial regarding a job offer he did not accept. We affirm.

1

¶ 2                               FACTS

¶ 3      On the evening of December 27, 2013, plaintiff slipped and fell inside a Casey's store and injured his right shoulder. Plaintiff filed a complaint against Casey's; Tanya Powell, the store manager; and Paul Morence, the assistant store manager. Morence was working the night plaintiff fell; Powell was not on the premises. On the day before trial, plaintiff dismissed Powell.

¶ 4      Prior to trial, plaintiff filed a motion *in limine* seeking to bar the defense from asking plaintiff about any job offers he received. Casey's filed a motion to allow cross-examination of plaintiff concerning an alleged job offer he received from Thomas Wuller. During his deposition, plaintiff said he received a job offer from Wuller as an assistant general manager at a truck stop that would have paid him $75,000 per year. Plaintiff said he was unable to accept the job because he needed to undergo surgery for injuries he sustained in the fall. The defense later deposed Thomas Wuller, who denied offering plaintiff a job or even knowing plaintiff, and sought to impeach plaintiff with this information. Plaintiff argued that, because he was no longer pursuing a claim for lost wages, the offer from Wuller was a collateral issue. The trial court agreed and denied the motion and granted plaintiff's motion *in limine*.

¶ 5      At trial, Paul Morence agreed that Casey's safety procedures require employees to check the stores for spills and leaks and to immediately clean up any spills. If an employee finds a spill, he or she should put out a "wet floor" sign, clean up the spill, and alert customers that the floor may be slick. Morence testified he checked the area where plaintiff fell right before the incident and he did not see any liquid on the floor. Casey's provided videotape of plaintiff's fall. The recording begins approximately four minutes prior to the fall. The videotape shows Morence walking through the area but does not show Morence looking down at the floor. Morence admitted he did not look at the floor.

2

¶ 6    Morence testified that the store is actually outfitted with three cameras, each of which shows a different angle. During discovery, Casey's only produced the video from one camera, the camera mounted over the front door. Morence testified that prior to trial he reviewed a different video from the one disclosed during discovery. He reviewed video from the camera that provided "an angle from the kitchen." As to the video introduced into evidence, Morence agreed that two parts of the video were missing, specifically files AVI 300 and AVI 800. Morence could not explain the missing files.

¶ 7    After plaintiff fell, Morence went to assist plaintiff. Plaintiff told Morence he could not move his arm and asked Morence what was on the floor. Morence testified that there was a colorless liquid, which he believed to be water, on the floor. He estimated the liquid was approximately one square foot in diameter. Morence got a towel and cleaned it up and then got a mop and mopped the area. He looked around to see if any machines were leaking but did not find any leaks. Morence agreed that he did not follow Casey's procedure in that he did not put out a "wet floor" sign nor did he take pictures of the spill, which he is supposed to do.

¶ 8    Tim Peters, the emergency medical technician (EMT) who responded to the scene, testified that he made a written report of the incident as required by his employer. His report was admitted into evidence as plaintiff's exhibit 1. The report indicates he was called to the scene because a man fell and was complaining of shoulder pain. When Peters arrived, an unidentified worker at the store directed him to the area where plaintiff was sitting on the floor near the coffee machines. Peters refers to the unidentified worker as "staff" in his report. Peters's report states, "Staff noted to [EMT] that another customer of theirs had spilled something earlier and that [they] have not quite had time to clean it up, and this [patient] happened to slip and fall." The report goes on to state that plaintiff told him he "walked around the corner *** and noted that his

3

feet went out on him, slipping and falling." Peters could not remember who the staff person was who gave him this information.

¶ 9 Plaintiff was initially treated at the emergency room. The emergency room doctor who treated plaintiff referred plaintiff to Dr. Felix Ungacta, a board-certified orthopedic surgeon. Dr. Ungacta testified that plaintiff told him he injured his right shoulder when he slipped and fell on a liquid with his right arm outstretched. Dr. Ungacta thought plaintiff might have a partial rotator cuff tear. He ordered magnetic resonance imaging (MRI), which appeared normal, and gave plaintiff a cortisone injection.

¶ 10 After the MRI and the injection, plaintiff's pain continued, so Dr. Ungacta performed arthroscopic surgery. Dr. Ungacta testified that it is not unusual for an MRI to look normal, even though the patient suffers from a tear. On March 25, 2014, Dr. Ungacta performed surgery on plaintiff and found a tear in plaintiff's superior labrum, which he repaired. Dr. Ungacta ordered two rounds of physical therapy (six weeks each) for plaintiff's right shoulder postsurgery. He noted that physical therapy can be painful. Dr. Ungacta testified that plaintiff followed his directions, was not a malingerer, yet still had some residual pain. According to Dr. Ungacta, residual pain is normal with the type of injury plaintiff suffered.

¶ 11 Plaintiff's girlfriend, Tammy Prestito, testified that, on the date of the occurrence, she and plaintiff stopped at Casey's to get a soda. She entered the store before plaintiff, who was pumping gas. She did not notice any spills in the area and did not spill anything herself. She did not know plaintiff had fallen until an ambulance arrived on the scene and a store employee came out to the car to tell her that plaintiff had fallen. She testified that plaintiff can no longer bowl, ride a motorcycle, or ride a WaveRunner, activities he enjoyed prior to falling in the store.

4

Plaintiff is also limited in his ability to throw a ball to his dog, something he did much more frequently before he injured his right shoulder.

¶ 12    On cross-examination, Ms. Prestito admitted she previously owned and managed a gas station with plaintiff and part of her job was to clean up spills. She said she did not notice any spills on the floor prior to plaintiff's fall. On redirect, Prestito testified the store she owned was equipped with floor mats in case there was a spill. The Casey's store where plaintiff fell did not have mats in the drink area. She also testified there were no warning signs posted in the area.

¶ 13    Plaintiff testified that he stopped at Casey's in order to get gas, windshield wiper fluid, and soda. While he was pumping gas, his girlfriend went into the store to get a soda. As to his fall, plaintiff testified, "I went into the store and turned the corner and fell." He said both feet went out from under him and he tried to catch himself with his right arm. He landed on his right side and immediately felt pain. While he was on the floor, he saw a clear liquid. He thinks the liquid was water. He said his pant legs were wet. He testified an employee went to get towels and wiped up the liquid. That same employee then got a mop and mopped around plaintiff as he was waiting for the ambulance to arrive.

¶ 14    Plaintiff went to the emergency room, where his right arm was X-rayed and later immobilized with a sling. The emergency room doctor told him to follow up with Dr. Ungacta. He said he was initially in a lot of pain. While the surgery reduced his pain, he still experiences pain when he lifts his arm past parallel. He can no longer go bowling, an activity he previously enjoyed. Prior to the fall, he was on two different teams and bowled twice a week. He said he has become more isolated since his injury. He takes two Aleve tablets each day for pain, but even that does not completely eliminate the pain. On cross-examination, plaintiff agreed that Dr. Ungacta removed all physical restrictions after plaintiff completed physical therapy.

¶ 15     Carrie Knebel Tolbert testified she was working in the kitchen of the Casey's store at the time plaintiff slipped and fell. She walked through the area where plaintiff fell about 5 to 10 minutes before he fell. At the time, she was carrying a tray of sandwich ingredients. She said she looked down to make sure she did not step in anything. She did not notice any liquid on the floor. When she went back to the area after plaintiff fell, she saw a puddle of clear liquid on the ground. She denied knowing about the spill before plaintiff fell. She also testified she did not tell an EMT that an employee knew about the spill but did not have time to clean it up.

¶ 16     She watched the video that Casey's produced during discovery, which goes back approximately four minutes before plaintiff's fall. She is not shown in the video. She said she saw a different video prior to being deposed in this case, which showed a different angle than the one shown in court. The video she saw prior to her deposition "showed me coming through the doors carrying the tray and going around that center island with all the creamers on it going past the coffee. I don't know if it was—but it wasn't from this angle."

¶ 17     Tolbert admitted that the Casey's safety manual requires pictures to be taken of the area if a customer falls. No pictures were taken of the area in question. She said that after plaintiff fell, she checked machines to see if any were leaking. She did not find any machines that were leaking. She agreed that if no machines were leaking, it was reasonable to think the water came from a spill, which was consistent with what the EMT said he was told by one of defendant's employees.

¶ 18     During a jury instruction conference, the trial court denied a request by Casey's to tender an instruction to the jury on contributory negligence (defendant's instruction 24). Plaintiff's counsel objected that defendant's instruction 24 failed to tell the jury how to separately apportion liability between Casey's and Morence or how to distinguish the allegations between the two

6

defendants. In denying the instruction, the trial court stated, "Well, I saw no evidence presented that the plaintiff contributed at all to the situation."

¶ 19 After the trial court rejected defendant's instruction 24, the defense submitted another liability instruction, instruction 25, based on Illinois Pattern Jury Instructions, Civil, Nos. 120.08 and 128.02 (2011) (hereinafter IPI Civil (2011) Nos. 120.08, 128.02). Plaintiff argued that instruction was inapplicable where a defendant's business activity causes the damage because a plaintiff is not required to prove the customer would not discover the danger in such circumstances. Defense counsel argued that plaintiff's instruction 11 failed to include the notice requirement. Plaintiff then suggested using plaintiff's instruction 11, without the notice requirement, as to Morence, and Defendant's Instruction 25 as to Casey's, but with the discovery element removed. Neither defendant objected at that point. The trial court noted it was giving Casey's "partial relief."

¶ 20 The trial court approved plaintiff's tendered instruction 20, based upon IPI Civil (2011) No. 50.11, which provided that Casey's "is a corporation and can act only through its officers, agents and employees. Any act or omission of an officer, agent or employee within the scope of their agency is the action or omission of the defendant corporation." The trial court recalled, "[M]y recollection is that both parties initially produced this one." Defense counsel replied, "I have no objection."

¶ 21 During trial, plaintiff made two separate motions for sanctions based upon the missing video. The trial court denied plaintiff's motions for sanctions based upon the missing video, finding that defense counsel had not intentionally withheld the video. During a break in the trial before the defense presented its case, the trial court realized that defense counsel was in possession of a video that depicted a different angle than the one produced to plaintiff during

7

discovery. At that time, defense counsel agreed there should be a sanction, specifically stating, "I certainly think an appropriate sanction would be not to allow us to play it and not to refer to it." Defense counsel also agreed with a prepared statement read by the trial court to the jury, telling the jury to disregard references made to a video showing plaintiff's right arm was not outstretched but his left arm was during the fall. The trial court ended the statement by saying, "The parties agree that the video in evidence does not show this."

¶ 22    The trial court also allowed, over defendant's objection, the following adverse inference instruction (based on IPI Civil (2011) No. 5.01) regarding videotapes that Casey's failed to disclose:

> "If a party to this case failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following:
>
> 1. That evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.
>
> 2. The evidence was not equally available to an adverse party.
>
> 3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.
>
> 4. No reasonable excuse for the failure has been shown."

Defense counsel objected to giving this instruction because the defense had already been barred from playing the video shot from the kitchen angle that defense failed to produce during discovery. The trial court disagreed, finding the instruction appropriate because the videos showing plaintiff's fall from different camera angles were separate and apart from the two missing files, AVI 300 and 800, on the videotape actually produced during discovery.

8

¶ 23   Ultimately, the jury returned a verdict in favor of plaintiff and against Casey's and in favor of Morence and against plaintiff. The jury awarded plaintiff damages in the amount of $300,000 for loss of normal life experienced and reasonably certain to be experienced in the future and $250,000 for past and future pain and suffering for a total of $550,000. Casey's filed a judgment *non obstante veredicto* (*n.o.v.*) motion and, in the alternative, motions for a new trial or remittitur or to amend the judgment. The trial court denied Casey's motions. Casey's now appeals.

¶ 24                                ANALYSIS

¶ 25                          I. Jury Instructions

¶ 26                        A. Contributory Negligence

¶ 27   Casey's argues the trial court erred in refusing to instruct the jury on contributory negligence. Casey's insists that contributory negligence is a question for the jury and Casey's introduced evidence from which reasonable minds could have concluded that plaintiff was contributorily liable for his injuries. Casey's asserts that plaintiff's fall shows he failed to keep a proper lookout or use due care when stepping into and/or walking through the puddle and that its instruction would have instructed the jury to consider whether this failure was a result of plaintiff's failure to exercise ordinary care under the circumstances. We disagree.

¶ 28   Jury instructions are meant to provide jurors with accurate principles of law applicable to the evidence that has been submitted to them, and an instruction is only justified if it is supported by some evidence in the record. *Gaines v. Townsend*, 244 Ill. App. 3d 569, 576 (1993). In the absence of any evidence of a plaintiff's contributory negligence, it is error to submit a defendant's instruction on contributory negligence over a plaintiff's objections. *Hickox v. Erwin*, 101 Ill. App. 3d 585, 590 (1981). A trial court's decision as to whether or not to allow a

9

proposed jury instruction is reviewed under an abuse of discretion standard and will not be reversed absent a clear abuse of discretion. *Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill. App. 3d 375, 388 (2000); *Koonce v. Pacilio*, 307 Ill. App. 3d 449, 461 (1999).

¶ 29 This contention by Casey's relates to the trial court's refusal of defendant's tendered instruction 24, which stated in part as follows:

"In order to reduce or deny plaintiff damages, the defendant Casey's Retail Company has the burden of proving each of the following:

First, that plaintiff James Lakin failed to exercise ordinary care for his own safety in one or more of the following ways:

a. Failed to keep a proper lookout.

b. Failed to use proper care."

In *Howat v. Donelson*, 305 Ill. App. 3d 183 (1999), similar vague allegations of contributory fault were found to constitute reversible error.

¶ 30 In *Howat*, the plaintiff, a beauty salon patron, sued the salon operator for injuries she sustained when she walked through a doorway into a darkened area to reach a tanning room and fell down a flight of stairs. *Id.* at 185. The jury found in favor of the defendant, and the plaintiff appealed. The reviewing court reversed and remanded for a new trial, finding that the defendant's instruction relating to contributory negligence was improper and prejudicial. The instructions set forth that plaintiff was contributorily negligent in that she " 'failed to keep a proper lookout' " and " 'failed to observe the conditions then and there present.' " *Id.* at 186. The *Howat* court found the instruction contained boilerplate allegations that were vague and conclusory and failed to inform "the jury of what material facts must be proven to establish that plaintiff was contributorily negligent" and "allowed the jury to return a verdict for defendant

10

without the requisite finding that some negligent act or omission by plaintiff caused or contributed to her injuries." *Id.* at 187. Here, the instructions are similarly vague and conclusory, and we cannot say the trial court erred in denying defendant's instruction 24.

¶ 31    We note that in *Howat*, the plaintiff also argued that the trial court should have directed a verdict in her favor on the issue of contributory negligence or entered a judgment *n.o.v. Id.* at 189. The court disagreed, however, finding that the defendant submitted sufficient evidence on the issue of contributory negligence so that the issue should be submitted to the jury on remand. The evidence showed the plaintiff had been in the building two other times on the day she fell, and when she entered the darkened room, she became confused as to which of two doors led to the tanning room. Instead of going back into the salon, the plaintiff forged ahead. *Id.* at 188-89.

¶ 32    In the instant case, defendants did not plead any facts beyond the vague and conclusory allegations that plaintiff failed to keep a proper lookout and failed to use proper care that would substantiate contributory negligence. Plaintiff testified there were "displays" in his way that blocked his view of the aisle, and once he turned the corner, his feet came out from underneath him and he fell. Our own review of the video evidence confirms the presence of a Christmas display that blocked his view of the floor area on which he fell. Plaintiff simply walked around the corner and fell. No witness testified there was water on the floor that plaintiff should have been able to see.

¶ 33    For example, plaintiff's girlfriend, Tammy Prestito, testified she was in the same vicinity only minutes before plaintiff's fall but did not notice any water. Two employees of Casey's, Paul Morence and Carrie Tolbert, who both walked in the area where plaintiff fell shortly before plaintiff, testified they did not notice any water in the area. The video shown at trial confirms

11

that neither Morence nor Prestito had any difficulty walking in the area shortly before plaintiff's slip and fall.

¶ 34 "Contributory negligence is lack of due care for one's safety as measured by the objective reasonable-man standard. [Citation.] In other words, the plaintiff is required to exercise that care which the reasonably prudent person would take to avoid injury in like circumstances." *Long v. City of New Boston*, 91 Ill. 2d 456, 463-64 (1982). However, "[i]t is not every negligence of a plaintiff that will be considered *** for the purpose of allocation of damages." *Owens v. Stokoe*, 115 Ill. 2d 177, 183 (1986). While Casey's has not presented this argument in terms of denial of its motion for judgment *n.o.v.*, we would be remiss if we did not point out the standard to be applied.

¶ 35 In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494 (1967), our supreme court established a single standard for determining both when contributory negligence may properly be considered by a court as a matter of law and when a directed verdict or a judgment *n.o.v.* should be entered. That standard is only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Id.* at 510. *Pedrick* recognizes that the "presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance," thereby allowing direction of a verdict. (Emphasis in original.) *Id.* at 504.

¶ 36 Here, there is nothing in the record to show plaintiff was contributorily negligent for his fall beyond the vague allegations of failure to keep a proper lookout or use proper care. Nobody testified that plaintiff did anything wrong or failed to see something that was clearly visible. The evidence shows that plaintiff simply turned a corner and slipped on liquid that the prior three

12

people to walk in the area had also failed to see. Under these circumstances, we cannot say the trial court erred in refusing to instruct the jury on contributory negligence.

¶ 37                                    B. Actual or Constructive Notice

¶ 38    Casey's next contends the trial court erred because it allowed an instruction that permitted the jury to find Morence liable without a finding of actual or constructive notice of the spill and an instruction that permitted the jury to find Casey's vicariously liable for the acts and omissions of Morence. According to Casey's, these instructions allowed Casey's to be held liable without proving actual or constructive notice of the spill, a requirement in proving that a business is liable to its invitee for injuries suffered on its premises. Plaintiff responds that the trial court instructed the jury it had to find actual or constructive notice in order to hold Casey's liable but the instruction as to Morence did not require a specific notice provision. Because Morence was not found liable, any error as to him was harmless. We agree with plaintiff.

¶ 39    The general rule is that liability will be imposed where a business invitee is injured by slipping and falling on a foreign substance on the premises if (1) the substance was placed there by the negligence of the owner or its employee, (2) the owner or its employee knew of its presence, or (3) the owner had constructive notice of the substance because it was there for enough time so that in the exercise of ordinary care its presence should have been discovered. *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill. 2d 469, 474 (1961); *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (1980).

¶ 40    A jury conference was conducted the day before closing arguments. The trial court noted that it admonished defense counsel to get to court early the next day if there was a problem with the instructions. Despite the admonition, defense counsel showed up only a few minutes before closing arguments were scheduled to begin, at which time he objected to some of the

13

instructions, including Plaintiff's Instruction 11. The trial court noted that it told defense counsel to look over the instructions and let the court know about any concerns, and then said, "I haven't heard from you. And here the jury's sitting outside waiting to be called in for closing arguments." Despite its obvious displeasure, the trial court allowed defense counsel to raise his objections.

¶ 41　　Plaintiff submitted instruction 11 concerning defendants' liability, which set forth a series of negligent acts by each defendant that allegedly caused plaintiff's injuries. It did not include any requirement that the jury find defendants had actual or constructive knowledge of the spill before the accident. Casey's submitted instruction 25, which stated that plaintiff could recover from defendants only if he could show the spill presented an "unreasonable risk of harm" and that defendants "knew or in the exercise of ordinary care should have known of both the condition and the risk," that defendants could reasonably expect that people on their property would not recognize the danger, and that defendants were negligent in one or more of the ways listed.

¶ 42　　Plaintiff objected to Casey's instruction 25 on the basis he was not required to prove that Casey's could reasonably expect that a customer would not have discovered the danger. Casey's objected to plaintiff's instruction 11 on the basis it did not include a notice requirement. Plaintiff suggested giving plaintiff's instruction 11, without the notice requirement, as to Paul Morence, and giving Casey's Instruction 25, minus the discovery element, as to Casey's. The trial court agreed, and Casey's did not specifically object; however, the trial court did note that defendant's issue was "preserved." Therefore, we disagree with plaintiff that Casey's has waived this issue.

¶ 43　　As to plaintiff's instruction 20 based upon IPI Civil (2011) No. 50.11, the trial court recalled that both parties initially produced the instruction to which defense counsel replied, "I

14

have no objection." A party is not allowed to complain about error in an instruction when it requested the same instruction. *Meyer v. Williams*, 15 Ill. App. 2d 513, 519 (1957).

¶ 44    The issues instruction ultimately submitted to the jury specifically provides that in order to recover, plaintiff must prove that "the defendant Casey's knew or in the exercise of ordinary care should have known of both the condition and the risk." Thus, contrary to this assertion by Casey's, the jury was instructed it could only find Casey's liable if it found that Casey's had actual or constructive knowledge of the spill. Paul Morence was not an owner, so we are unconvinced that a notice provision was required for him.

¶ 45    Nevertheless, Casey's claims it was prejudiced by the instruction as to Morence without the notice requirement because it was vicariously liable for Morence's acts and omissions. As a reviewing court, we "will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 274 (2002). After careful consideration, we agree with plaintiff that any error in the instruction with regard to Morence was harmless for two reasons.

¶ 46    First, we point out the jury found in favor of Morence and against plaintiff. Because the jury found Morence not liable, an issues instruction directed at Morence could not have prejudiced Casey's. Second, we point to the testimony of Tim Peters, the EMT who responded to plaintiff's slip and fall. He made a written report of the incident in which he noted that a worker at the store was aware that another customer had spilled something earlier but no one had time to clean it up.

¶ 47    Carrie Tolbert, a Casey's kitchen worker, testified that after plaintiff fell, she checked the drink area to see if any machines were leaking. She did not find any leaks. If no machines were

leaking, it is reasonable to believe that the liquid came from a spill, as Tim Peters wrote in his report. Peters's testimony confirms that Casey's had actual notice of the spill. Under these circumstances, we find any error with regard to the exclusion of a notice provision for defendant Morence was harmless.

¶ 48                                    C. Adverse Inference

¶ 49     Casey's argues the trial court erred in submitting instruction 22, based on IPI Civil (2011) No. 5.01, because it allowed the jury to draw an adverse inference based on the alleged failure by Casey's to disclose another video of plaintiff's slip and fall without the required foundation and because the trial court had previously sanctioned Casey's for its alleged failure to disclose. Plaintiff responds that the trial court properly submitted the IPI Civil (2011) No. 5.01 instruction because that conduct by Casey's was sanctionable and the missing videos fit the requirements of IPI Civil (2011) No. 5.01.

¶ 50     IPI Civil No. 5.01 informs the jury that it may infer that certain evidence would have been adverse to a party where that evidence was not produced by the party and was within the party's control. *Koonce*, 307 Ill. App. 3d at 461. In submitting IPI Civil No. 5.01 to the jury, a trial court must first determine whether, in all likelihood under the facts and circumstances of the case, the party would have produced the evidence unless it was unfavorable. *Id.* The adverse presumption that may be created is dependent on the absence of a reasonable excuse for a party's nonproduction or willful withholding of the evidence in question. *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1009 (2003). The instruction is not warranted if the unproduced evidence is merely cumulative of the facts and circumstances that have been established. *Id.* Whether or not to submit IPI Civil No. 5.01 to the jury is left to the sound discretion of the trial court, and its decision will not be reversed absent a clear abuse of discretion. *Id.*

16

¶ 51   During discovery, plaintiff requested "[a]ny and all surveillance reports, audiotapes, photographs or video depicting the area where the plaintiff slipped and/or fell or of plaintiff or his injuries." In response, Casey's produced one video of the occurrence, which started approximately 4 minutes and 20 seconds prior to plaintiff's fall. At trial, it became apparent that two parts of that video were missing, AVI 300 and AVI 800. Paul Morence, Casey's employee, confirmed that files 300 and 800 were missing. The defense failed to offer an explanation for the missing files.

¶ 52   Before Casey's presented its case in chief there was a break in the trial. The trial court noticed counsel for Casey's preparing a video that "depicted a different angle" than the video previously shown. It also contained files AVI 300 and 800. Plaintiff requested sanctions. Counsel for Casey's stated that any failure to disclose was unintentional. At that point, the trial court agreed that it would not make sense for Casey's to intentionally conceal a video it intended to show at trial and refused to order sanctions but barred Casey's from showing the undisclosed video and admonished the jury to ignore any prior comments made about a video showing the accident from a different angle.

¶ 53   During the case in chief for Casey's, Paul Morence disclosed that there are actually three cameras in the store that would show the area where plaintiff fell. Morence described how the camera that shot the video that was produced to plaintiff and was shown at trial was mounted above the kitchen door. It failed to show the area on the floor where plaintiff fell.

¶ 54   Morence and Carrie Tolbert both testified that they saw security video that was different from the video shown at trial. Tolbert described video she saw that included her walking through the area approximately 5 to 10 minutes before plaintiff fell and was shot from a different angle.

17

Morence also testified that he saw footage that started prior to the time of the video shown to the jury and was shot from a different angle.

¶ 55    Defense counsel objected to giving the IPI Civil (2011) No. 5.01, arguing that the only video showing a different angle of the accident was the one the trial court viewed earlier and refused to allow Casey's to show to the jury. The trial court disagreed, specifically stating:

>  "Well, I know you've objected to it, Mr. Teasdale, and I know you have said that you're unaware—*personally* unaware of any other video.
>
>  In light of the totality of the circumstances, we do know there were two clips that were in your possession that were not provided to the plaintiff, and now I think this is a third clip that was described in detail by more than one witness, but in particular I think it's Mrs. Tolbert now.
>
>  Under those circumstances, I'm going to give this objection—instruction, I'm sorry over your objection." (Emphasis added.)

From this we can glean that, while the trial court may have believed defense *counsel* was unaware of other video, it believed Casey's was aware of additional videotape of the alleged incident but chose not to produce it.

¶ 56    Plaintiff correctly points out that none of the videos in the record on appeal show a woman carrying a meat and cheese tray and none of the videos go back 5 or 10 minutes from the occurrence. Because Paul Morence testified the store is equipped with three cameras showing three separate angles, we agree with the trial court that the only conclusion that can be drawn from the record before us is that Casey's did not produce all of the videotapes of the incident.

¶ 57    Additionally, it cannot be said that the missing video was cumulative because the missing video would have been shot at a different angle and would have shown the area for a longer

18

period of time before the occurrence. Under these circumstances, we cannot say it was an abuse of discretion to instruct the jury that it may draw an inference adverse to defendant. Frankly, in light of the harsh sanctions available to the trial court for discovery violations under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), the trial court's submission of IPI Civil (2011) No. 5.01 to the jury appears restrained.

¶ 58                                II. Job Offer

¶ 59    Casey's contends the trial court erred in barring defense counsel from cross-examining plaintiff about his false testimony during his discovery deposition concerning a job offer he allegedly received but was unable to accept due to his injuries. Casey's insists plaintiff's invention of a fake job offer to increase his potential damages goes directly to his credibility and is not a collateral issue. Plaintiff responds that, (1) because Casey's failed to make an offer of proof, it has waived any claim of error and, (2) even if the issue was not waived, the trial court was within its discretion in barring the collateral evidence about whether or not plaintiff received a job offer once plaintiff withdrew his claim for lost wages.

¶ 60    A formal offer of proof in the form of questions to the witness outside the hearing of the jury is not always required. *Yassin v. Certified Grocers of Illinois, Inc.*, 150 Ill. App. 3d 1052, 1066 (1986). It is not required if it is clear the trial court understood the nature and character of the evidence a party was seeking to introduce. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002). Here, the trial court understood that the defense was attempting to challenge plaintiff's credibility by cross-examining him about the alleged job offer.

¶ 61    Prior to trial, plaintiff filed a motion *in limine* seeking to bar the defense from cross examining him about an alleged job offer from Thomas Wuller to be an assistant general manager at a truck stop. The alleged job offer was discussed during plaintiff's deposition.

19

Plaintiff said he could not accept the job offer because of his injuries resulting from his slip and fall inside the Casey's store. The defense later deposed Wuller, who denied offering plaintiff a job or even knowing plaintiff. In response to plaintiff's motion, Casey's filed a motion to allow cross-examination of plaintiff on the alleged job offer. The trial court denied the defense motion and granted plaintiff's motion *in limine*. While we do not find the issue waived, we agree with plaintiff that the proposed impeachment of plaintiff pertained to a collateral issue.

¶ 62 A witness may be impeached by any evidence that contradicts him and/or affects his credibility adversely, but the scope of impeachment is not unlimited. For example, a witness cannot be impeached on a collateral matter. *Funk v. Venture Stores, Inc.*, 94 Ill. App. 3d 115, 118 (1981). A matter is collateral if it fails to be relevant to a material issue in the case. *Esser v. McIntyre*, 169 Ill. 2d 292, 305 (1996). The purpose of excluding collateral evidence is to prevent the jury from being distracted from the main issue in the case. *Id.* The character and scope of cross-examination rests largely within the sound discretion of the trial court. *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226, 245 (1988).

¶ 63 In *Funk*, the plaintiffs, Mr. and Mrs. Funk, brought a four count negligence action arising out of injuries Mrs. Funk sustained on March 27, 1975, when she tripped and fell over a no-parking sign on the sidewalk in front of defendant's store. *Funk*, 94 Ill. App. 3d at 116. The defendant argued the trial court should have allowed it to impeach the plaintiffs by confronting them with the fact that their restaurant had been placed on the market for sale in 1974, which refuted answers to interrogatories that Mrs. Funk's injuries forced the sale. *Id.* at 117. The *Funk* court disagreed with the defendant that granting plaintiffs' motion *in limine* to prohibit defendant from attempting to impeach on these facts deprived the defendant of a fair trial. *Id.* at 118. The court specifically stated:

20

"Whether, and to what extent, Mrs. Funk's injuries related to the decision to sell the restaurant business is irrelevant to the issues as framed by the pleadings on the day of trial. The only issue to which that fact may be relevant—the amount of wages or profits lost due to her injuries—no longer existed at the time the parties went to trial due to plaintiff's decision to strike the claim for lost wages from their amended complaint. *** The irrelevancy of this evidence in light of the withdrawn lost wages and profits claim rendered it collateral, and inadmissible for purposes of impeachment." *Id.* at 118-19.

¶ 64    We agree with this analysis.

¶ 65    However, we understand that *Funk* is distinguishable. In *Funk*, the issue of the plaintiff's claim of lost profits due to Mrs. Funk's injuries was not sought to be admitted to discredit the plaintiffs based on an improper motive but rather to contradict the plaintiffs' allegation that the accident forced the sale of their restaurant. *Id.* at 119. Here, defendant sought to call into question plaintiff's veracity by cross-examining him about the alleged job offer.

¶ 66    But we simply cannot ignore the fact that here plaintiff also dropped his lost wage claim prior to trial. The trial court granted plaintiff's motion *in limine*, which barred the defense from cross-examining plaintiff about this alleged job offer. The standard of review of a trial court's decision to grant or deny a motion *in limine* is abuse of discretion. *Alm v. Loyola University Medical Center*, 373 Ill. App. 3d 1, 4 (2007). A trial court abuses its discretion only if it exceeds the bounds of reason and ignores recognized principles of law or if no reasonable person would take the view adopted. *Id.* Under the circumstances presented here, we cannot say no reasonable person would take the view adopted by the trial court or that the trial court ignored recognized principles of law in granting plaintiff's motion *in limine*. The trial court was within the bounds of reason in prohibiting defendant from cross-examining plaintiff about his alleged job offer from

21

Thomas Wuller given the fact that plaintiff dropped his lost wage claim before the trial commenced.

¶ 67                              CONCLUSION

¶ 68    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.


¶ 69    Affirmed.

2018 IL App (5th) 170152

NO. 5-17-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JAMES LAKIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-L-655 |
| | ) | |
| CASEY'S RETAIL COMPANY, d/b/a | ) | |
| Casey's General Store, Inc. #1972, | ) | |
| a/k/a Casey's General Stores, Inc., | ) | |
| an Iowa Corporation, | ) | Honorable |
| | ) | William A. Mudge, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**      June 14, 2018

---

**Justices:**      Honorable Richard P. Goldenhersh, J.

Honorable John B. Barberis, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

---

**Attorneys**
**for**
**Appellant**

John P. Cunningham, Brown & James, P.C., Richard Plaza 1, 525
West Main Street, Suite 200, Belleville, IL 62220-1547; T. Michael Ward,
Brown & James, P.C., 800 Market Street, Suite 1100, St. Louis, MO
63101-2501; Douglas S. Teasdale, 5017 Washington Place, Suite 302,
St. Louis, MO 63108

---

**Attorneys**
**for**
**Appellee**

Roy C. Dripps, Charles W. Armbruster III, Michael T. Blotevogel,
Courtney C. Stirrat, Armbruster, Dripps, Winterscheidt & Blotevogel,
LLC, 51 Executive Plaza Court, Maryville, IL 62062